In the Matter of the Application for Probate of the last Will of Eliza B. Beckett, deceased.

103   167
110   281
———————
| 103   167 |
| 166   336 |
| 166   337 |

While holographic wills are not excepted from the terms of the statute requiring and prescribing the method of publication, in case of such a will, criticism of the terms and manner of what is claimed to be a sufficient publication need not be so close or severe as where the question as to whether the testator knew that he was executing a will depends solely upon the fact of publication.

In any case a substantial compliance with the statute is sufficient; the necessary information to the subscribing witnesses, as to the character of the instrument, may be given in any manner which conveys to their minds the testator's consciousness that it is a will.

It is not essential to a valid publication that the words of publication be at the time complete in and of themselves. It is sufficient if the declaration is made definite and complete by reference on the part of the testator to a former conversation between him and the witness.

Where, at the time of the execution of a will written by the testatrix she said to one of the witnesses, "this is the paper I spoke to you about signing," referring to former conversations between them in which she had stated that she was going to make a will which she wished the witness to sign as a witness, and which the latter had promised to do. *Held*, this was a sufficient publication as to that witness.

The other witness had been a witness to a former will which the testatrix had explicitly declared to be her will. She had also been advised by the testatrix that she desired to make an alteration therein, because of the sickness of A., the principal beneficiary. Being sent for by the testatrix she found her with the alleged will before her, and was asked by her if she would sign it on account of the sickness of A., the testatrix adding that she was sorry to trouble the witness "again to sign the paper." *Held* a sufficient publication.

A clause in the will was as follows: "I leave and bequeath to my niece, Alice McBlair, all the money I die possessed of in several banks, and bonds, besides all I bequeathed to her in a former will." The testatrix had executed a former will which was not found, but which the circumstances indicated she had never revoked or intended to revoke. *Held*, that so far as the property referred to in the clause was concerned, it was capable of identification, and the will was sufficiently definite and certain to pass title thereto.

(Argued June 6, 1886 ; decided October 5, 1886.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order

made March 4, 1885, which reversed a decree of the surrogate of the county of New York refusing probate of an instrument propounded as the last will of Eliza B. Beckett, deceased, and directed its admission to probate. (Reported below, 35 Hun, 447.)

The instrument presented as the will of the deceased was written by herself. It was dated on the 5th of October, 1881, subscribed by her and by two witnesses who were present at the time of its execution. It was as follows:

*" Octo. 5th,* '81.

" My last will and testament. I leave and bequeath to my niece Alice McBlair all the money I die possessed of in several banks, and bonds, besides all I bequeathed to her in my former will.

" I leave $200 to my niece Ellen Laffan to use for a purpose I have explained to her in writing, and which she has promised to attend to faithfully.

" In case of the death of Alice, I desire all I have left to her to be divided equally between my nieces, excepting $1,000 for the suffering poor, to the care of Father Doherty, Holy Innocents Church.

"Signed in the presence of two witnesses.

"ELIZA B. BECKETT.

"Marie Deen,

" 104 East Fifty-fourth street.

"Louise de Cassini."

It was proved by uncontested evidence that decedent intended, prior to the time when this instrument was executed, to make a testamentatary disposition of her property in favor of Alice McBlair, the principal legatee, who was her niece. The decedent had no children. Alice McBlair was the daughter of her deceased sister, who died when Alice was of about the age of two years. From that time she became a member of the family of the decedent, and continually resided with her until she was taken to Litchfield, in the State of Connecticut,

and placed there in an institution for medical treatment.   The intervening period was nearly, if not quite, twenty-six years, and during that time the relations between the decedent and Alice were those of mother and daughter.   Nearly a year before the execution of this instrument Alice became impaired in her health, and appears from that time to have been a person of unsound mind, and she was placed in the institution at Litchfield to receive medical attention for her disease.   The decedent appears to have regarded the dependence of Alice upon her bounty as increased by this circumstance, and on that account concluded to make such a disposition of her property as surely to secure the protection of her adopted daughter during her life.   Before doing so she proceeded to Litchfield for the purpose of being near this adopted daughter and understanding her condition and ascertaining the probabilities of her recovery.   She remained there upwards of a month after the 13th of August, 1881.   Before her departure upon the journey she was, during the preceding night, at the Grand Union Hotel, in the city of New York.   She had with her there Louise de Cassini, one of the witnesses, who was in her service, and a conversation took place between them concerning the future purpose of the decedent in the execution of a will.   Her statement, as it was related by the witness, was that " she was going to make a preparation for her daughter."   *   *   *   " I knew whom she meant.   She asked me if I would be willing to sign a paper for her any time that she would ask it of me, and I told her I would.   She said in the hotel she was about to make a will, but she did not have me to sign that will."   In her cross-examination, referring to the same conversation, the same witness stated: " She told me that she thought a great deal of her daughter, and she said all she had she was going to give to her daughter. She said her daughter was her favorite, and she thought a great deal of her, and nothing was too good for her. She was sorry and very much grieved that she had to be where she was."   At Litchfield this subject was again referred to, when the witness was told by the decedent " that the case may come into court some day, but that I need not be afraid ; nothing would happen

to me about it." She further testified : " She said to me she was about going to make a will, but she did not know when." * * * And added : " She said, ' would you be willing to sign that paper for me ? ' ' Would you be willing to sign a paper for me some day ? ' " Both in her direct and cross-examination she stated the fact that the instrument which was to be made and witnessed was mentioned by the decedent as a will. When the witness Cassini entered the room then occupied by the decedent and the witness Deen, at the time of the execution of the instrument, the former said, to give the language of the witness : " There is the paper I spoke to you about signing. I was going to sit down, and she said, wait a moment, that she had to write first. She said, are you willing to sign ? I said, yes. She said, well, it may make you come to court, but you need not be afraid, there will be no trouble upon you for it."

The evidence of Miss Deen, the other witness, was to this effect : She had witnessed preceding wills made by the decedent in 1876, 1877 and 1880. The will of 1880 was subscribed by this witness and another person, and as the other, who was the decedent's maid, was turning from the table to leave the room, the decedent inquired of her if she knew what the instrument was, and when she replied that she did not, the decedent said : " It is my last will and testament." She was sent for to witness the instrument in controversy. She testified to the transaction as follows : Upon her arrival she was asked by the decedent to sign this paper, " that she wanted to make alterations in her previous one on account of Miss McBlair's sickness." * * * " When I came there she wanted me to sign a paper again, that she wanted to make alterations of a previous one on account of Miss McBlair's sickness." * * * " She just simply asked if I would sign that paper on account of Alice's sickness, that she wanted to alter it. She said she was sorry to trouble me again to sign the paper." This paper was lying upon the table at the time, and the witness did subscribe it. She testified further that the decedent did not declare to her, or in her presence, that this was her last will and testament, nor that it was a codicil to her last will and testament.

But the witness added : " She spoke of that paper as her will, and she spoke of this being alterations of the other paper, and, of course, I knew it was her will."

Further facts appear in the opinion.

*E. Ellery Anderson* for appellants.    The testatrix did not, at the time of subscribing the instrument propounded for probate, sufficiently declare the same to be her last will and testament.    ( *Woolley* v. *Woolley*, 95 N. Y. 231 ; *Seymour* v. *Van Wyck*, 6 id. 120 ; *Mitchell* v. *Mitchell*, 16 Hun, 97 ; 77 N. Y. 596 ; *Lewis* v. *Lewis*, 11 id. 220 ; *Gilbert* v. *Knox*, 52 id. 125, 128 ; *Ex parte Beers*, 2 Bradf. 163 ; *Wilson* v. *Hetterich*, id. 427 ; *Remsen* v. *Brinckerhoff*, 16 Wend. 324 ; *Walsh* v. *Walsh*, 4 Redf. 165 ; *Nugent* v. *Nugent*, 2 id. 389.)    The declarations of Mrs. Beckett, whether written or verbal, are not competent evidence on the issue as to the proper execution of the codicil.    ( *Waterman* v. *Whitney*, 11 N. Y. 157 ; *Johnson* v. *Hicks*, 1 Lans. 150 ; *Marx* v. *McGlynn*, 4 Redf. 455.)    The paper offered for probate must be rejected as fragmentary in the absence of the original will, which is lost.    (*Sisters of Charity* v. *Kelly*, 67 N. Y. 418 ; *In re Will of O'Neil*, 91 id. 516 ; *Murray* v. *Oliver*, 6 Ired. Eq. [N. C.] 55 ; *Simmons* v. *Simmons*, 26 Barb. 68, 75 ; *Haven* v. *Foster*, 14 Pick. 540 ; *Negley* v. *Gard*, 20 Ohio, 310 ; *Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375 ; *Hosea* v. *Jacobs*, 98 Mass. 68 ; *Boyd* v. *Latham*, Busb. [N. C.] Law, 365 ; *Tilden* v. *Tilden*, 13 Gray [Mass.], 108 ; *Snow* v. *Foley*, 119 Mass. 102 ; *In re Pinckney*, 1 Tuck. 436.)    The declarations of the decedent, made prior and subsequent to the time of the signing of the paper in dispute, were incompetent and should not have been considered by the General Term.    ( *Waterman* v. *Whitney*, 11 N. Y. 157 ; *Johnson* v. *Hicks*, 1 Lans. 150 ; *Marx* v. *McGlynn*, 8 Redf. 455, 461.)

*Frederick S. Wait* for appellant Ellen Laffan.    There is no sufficient proof of a declaration, made at the time by the testator, that the paper in dispute was her will. (*Lewis* v. *Lewis*, 11 N. Y. 220 ; *Seymour* v. *Van Wyck*, 6 id. 120 ;

*Gilbert* v. *Knox*, 52 id. 125 ; *Ex parte Beers*, 2 Bradf. 163 ; *Wilson* v. *Hetterick*, id. 427 ; *Larabee* v. *Ballard*, 1 Dem. 496 ; *Woolley* v. *Woolley*, 95 N. Y. 231 ; *Mitchell* v. *Mitchell*, 16 Hun, 97 ; affirmed, 77 N. Y. 596 ; *Howland* v. *Taylor*, 53 id. 627.) The scrap of paper presented for probate, being a codicil, cannot be probated in the absence of the "former will." (*Payne* v. *Payne*, 18 Cal. 291 ; *Moore* v. *White*, 6 Johns. Ch. 360.)

*Joseph S. Auerbach* and *Ch. Francis Stone* for appellants Walsh and others. The statute requires that the testator, at the time of subscribing or acknowledging his subscription, shall, in the presence of the witnesses, declare the instrument so subscribed to be his last will and testament. (*Gilbert* v. *Knox*, 52 N. Y. 125 ; *Woolley* v. *Woolley*, 95 id. 231 ; 11 id. 226.) What the statute requires is a declaration of the nature of the testamentary instrument, not of its object. (11 N. Y. 226 ; 1 Denio, 36 ; *Lewis* v. *Lewis*, 11 N. Y. 227.) The fact that the will was holographic makes no difference in this case. (*Wilson* v. *Hetterick*, 2 Bradf. 427, 428 ; *Brinckerhoff* v. *Remsen*, 8 Paige, 488 ; *Rutherford* v. *Rutherford*, 1 Denio, 33.)

*John L. Cadwalader* for respondents. There was a substantial declaration by the testatrix, at the time of subscribing the will, that it was her last will and testament. A literal compliance with the provisions of the statute is not required. A substantial observance of them will be regarded as sufficient. (*Gilbert* v. *Knox*, 52 N. Y. 125 ; *Trustees, etc.,* v. *Calhoun*, 25 id. 422 ; *Gamble* v. *Gamble*, 39 Barb. 373 ; *Coffin* v. *Coffin*, 34 N. Y. 9 ; *Nelson* v. *McGiffert*, 3 Barb. Ch. 158 ; *Carle* v. *Underhill*, 3 Bradf. 107 ; *Seguine* v. *Seguine*, 2 Barb. 385 ; *In the Matter of Cottrell*, 95 N. Y. 329 ; *Lane* v. *Lane*, id. 494.) The testatrix need not in words declare the instrument to be her will, but it is enough if by words or acts she makes the fact known to the witnesses, and they sign at her request. (*Brinckerhoff* v. *Remsen*, 8 Paige, 496 ; *Lewis* v. *Lewis*, 11 N. Y. 224 ; *Nipper* v. *Groesbeck*, 22 Barb. 670 ;

*Moore* v. *Moore*, 2 Bradf. 261 ; *Robins* v. *Cory*, 27 Barb. 557 ; *Peck* v. *Cary*, 27 N. Y. 9 ; *Matter of Gilman*, 38 Barb. 364; *Campbell* v. *Logan*, 2 Bradf. 90 ; *Lane* v. *Lane*, 95 N. Y. 494 ; *Trustees, etc.*, v. *Calhoun*, 25 N. Y. 422, 424, 425 , *Simmons* v. *Simmons*, 26 Barb. 77 ; *Coffin* v. *Coffin*, 23 N. Y. 15 ; *Gilbert* v *Knox*, 52 id. 125.) The acts of other parties in requesting a witness to sign, or in stating it is a will, may be adopted by the testator by his silent assent, or even by not dissenting. (*Peck* v. *Cary*, 27 N. Y. 9 ; *Coffin* v. *Coffin*, 23 id. 9 ; *Thompson* v. *Stevens*, 62 id. 635; *Lane* v. *Lane*, 95 id. 494.) A will may be described as a paper, and if spoken of as such is really spoken of as a will. (*Moore* v. *Moore*, 2 Bradf. 261, 265 ; *Peebles* v. *Case*, id. 226 ; *Lane* v. *Lane*, 95 N. Y. 494 ; *Seguine* v. *Seguine*, 2 Barb. 386 ; *Jauncey* v. *Thorne*, 2 Barb. Ch. 40 ; *Seymour* v. *Van Wyck*, 6 N. Y. 120 ; *Abbey* v. *Christy*, 49 Barb. 276 ; *Van Hooser* v. *Van Hooser*, 1 Redf. 371 ; *Torrey* v. *Bowen*, 15 Barb. 304; *McDonough* v. *Loughlin*, 20 id. 238 ; *Nipper* v. *Groesbeck*, 22 id. 670 ; *Gilman* v. *Gilman*, 1 Redf. 354 ; *Torrey* v. *Bowen*, 15 Barb. 304; *Simmons* v. *Simmons*, 26 id. 77 ; *Vaughan* v. *Burford*, 3 Bradf. 78 ; *In re Will of Pepoon*, 91 N. Y. 260 ; *Rugg* v. *Rugg*, 83 id. 592 ; *In re Kellum*, 52 id. 517; *Von Hoffman* v. *Ward*, 4 Redf. 244 ; *Nipper* v. *Groesbeck*, 22 Barb. 670.) The will, being entirely in the handwriting of Mrs. Beckett, is of itself a declaration by her that it is her last will and testament (*Guimbault* v. *Public Adm'r*, 4 Bradf. 226 ; Jarman on Wills [5th ed.], 767, note 11 ; *Ray* v. *Walton*, 2 A. K. Marsh. 71.) The paper in question is a complete will, and admissible to probate as such without the production or probate of the former will. (*Bulkley* v. *Redmond*, 2 Bradf. 281 ; *Holland* v. *Ferris*, id. 334 ; *Idley* v. *Bowen*, 11 Wend. 227 ; Williams on Exrs. [6th ed.] 101, 134 ; *Dickinson* v. *Stidolph*, 11 C. B. [N. S.] 341 ; *Wood* v. *Sawyer*, Phill. [N. C.] Law, 251 ; *In re Gray*, L. R., 1 P. & D. 72 ; 1 Wms. 154, note 1.)

FINCH, J.   The evidence in this case establishes that both of the subscribing witnesses understood from the words and acts

of the testatrix, uttered and done at the execution of the will, that she knew the paper she was signing to be testamentary and desired them to act as witnesses thereto. Miss Deen swears that she knew the paper to be a will from the words addressed to her by the testatrix, and similar means of knowledge attached to the language in which she requested the signature of Miss Cassini. It is entirely certain that the testatrix understood the character and contents of the paper which she executed ; that she did exactly what she intended to do and without the possibility of mistake or imposition ; for the will was a holograph ; in her own handwriting from the declaration " My last will and testament," with which it began, to and including the words "signed in the presence of two witnesses," which immediately preceded her own signature. While the primary and principal purpose of the statute requiring a publication at the time of the testamentary act was thus nearly secured and the danger of error or fraud reduced to a minimum, its bare possibility remained, and the command of the statute still required obedience, since holographic wills are in no manner excepted from its terms. But in such a case, criticism of the terms and manner of what is claimed to have been a sufficient publication need not be so close or severe as where the question whether the testatrix knew that she was executing a will depends solely upon the fact of publication. It has often been held that a substantial compliance with the statute is sufficient. It requires no literal adherence to its own words and phrases, but permits the necessary information to be given in any manner adequate to the desired result. Where the testator cannot speak at all, or only with difficulty, he may communicate his knowledge by signs or by words to some listeners unintelligible. He must communicate it, however ; but if he does that in a manner capable of conveying to the minds of the witnesses his own present consciousness that the paper being executed is a will, that must necessarily be sufficient. At the time of the execution of the will in controversy the testatrix did not once call it a will, but spoke of it as a paper. To a stranger the expression would fail to indicate what kind of a paper she understood

it to be, and if no more than that was communicated to the witnesses it was not sufficient.   But to them the indefinite and general expression was made definite and descriptive of a will by her own words connecting the expression with a previous conversation and referring the memory of the witnesses to it. Miss Deen had been a subscribing witness to an earlier will of the testatrix which the latter had declared to be such in express terms.   The witness knew the relations subsisting between Alice McBlair and the testatrix.   While Alice was a niece, she had been brought up from early infancy by Mrs. Beckett as a daughter, and loved and cared for as such.   The witness knew also of the illness which had afflicted Alice and, for the time at least, had left her insane.   Before Miss Deen was sent for to sign the will she had been told by Mrs. Beckett that the latter desired to make an alteration of the previous paper on account of Alice's sickness.   Being sent for by a note she found the testatrix with this will before her.   She asked Miss Deen if she would sign that paper, on account of Alice's sickness; that she wanted to make alterations of a previous one on that account; and that " she was sorry to trouble me *again* to sign the paper."   The witness could hardly fail to correctly interpret Mrs. Beckett's meaning.   In substance it was that the paper before her was intended as an alteration of a previously executed will, made necessary by the sickness of Alice, and that the signature of the witness was again, for a second time, desired to a similar paper and in the same capacity as at first. Miss Deen did so understand it.   She swears to that explicitly, and explains how and why it was that she knew from the words of the testatrix that the latter understood the testamentary character of the paper being executed.   Substantially the same thing is true of Miss Cassini except that she was not asked what she understood from the language of the testatrix.   At the Grand Union Hotel in New York, the night before starting for Litchfield, Mrs. Beckett told the witness that she was going to make a will; asked Miss Cassini who she was to see if she was " reliable ;" told her about Alice, and that all she had she intended to give her; and then asked Miss Cassini if she would

be willing to sign that paper for her. The witness promised. She knew at the end of the conversation that Mrs. Beckett was intending to make a will for the benefit of Alice, to which she, Miss Cassini, had promised to be a witness. She was reminded of that promise soon after while at Litchfield, and told that the case might come into court some day, but she need not be afraid. And finally when the will was ready for execution the testatrix said, "this is the paper I spoke to you about signing." It is impossible not to see, taking the whole conversation together, that Miss Cassini must have understood the testatrix to declare that the paper she signed was the will which she had said she intended to make, and to which as a witness she had asked Miss Cassini to promise her signature.

But it is objected that a declaration dependent upon a previous conversation for its meaning will not answer the requirement of the statute, and that the words of publication must at the time be complete in and of themselves. It may be that an imperfect and indefinite declaration cannot be made sufficient by proof of a previous conversation not connected with the *factum* by the words of publication used. But here they were so connected by the very language of the testatrix at the time of execution. She herself so referred to the previous conversations, so connected them with the paper then present, as to make them an essential part of the communication, almost as completely as if she had formally repeated them. Looking at the substance of what occurred, and giving great importance to the fact that the will was a holograph, we are disposed to concur with the General Term in holding that due publication was proved.

But there is a further difficulty to be considered. The testatrix had executed a previous will which has not been found and cannot as yet be produced. No fact in the case points to its destruction by the testatrix, but every circumstance indicates that she never revoked or intended to revoke it. . Under her deceased husband's will she had a power of appointment to the extent of $25,000, which she could exercise in favor of her sisters or her nieces, but which, without her testamentary

action, would leave that sum a constituent part of her husband's estate. The witness who drew the missing will is quite sure that she exercised that power of appointment, and asserts as the result of his memory that the sisters of the deceased, who are the present contestants, were not named or provided for in the will which he drew. The will before us provides : " I leave and bequeath to my niece, Alice McBlair, all the money I die possessed of in several banks, and bonds, besides all I bequeathed to her in my former will." It is objected that this bequest is uncertain and indefinite, and the property intended cannot be selected out and inventoried. So far as it passes by this will it is capable of identification. It transfers whatever money the testatrix had at her death which was on deposit or stood to her credit in any banks, or was invested in and represented by bonds. That is certain which may be rendered certain, and an inquiry as to her bank accounts and an examination of her securities would disclose what and how much would pass by the will. The added phrase, " besides all that I bequeathed to her in my former will," tends to make the bequest independent of and separable from that' contained in the former will. The word " besides " means in addition to, over and above, outside of, and separately from, what had been previously given. And the later bequest is so absolute and without condition, so surely intended to stand by itself and dictate its own effect, that it may be operative whether the earlier provision is known or unknown. (*In re Greig*, L. R., 1 P. & D. 72.) Nor does it alter the case to say that the sisters are thus unprovided for. It is quite doubtful whether the previous will gave them any thing, but if it did provide for them out of the $25,000, its loss is alike their misfortune and that of Alice, and the latter should not lose what is given to her for that reason. But they are not wholly unprovided for. They themselves tell us in their counsel's brief that Mrs. Beckett had accumulated over $40,000, of which $30,000 was in banks and in bonds, and the balance in the hands of various parties and in the form of furniture and silver-ware. Something like $8,000 or $10,000 is thus apparently left undisposed of for the next of kin, and

their struggle here is to secure the whole at the expense of the manifest and clear intention of the testatrix.    We think the effort should not succeed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.