action, the said Charles H. Ashley was justly indebted to this defendant the amount of said judgment; and in connection herewith defendant further alleges upon information and belief that at the times referred to in the second paragraph or subdivision of the complaint the said Grant referred to in said paragraph was not the captain of police in said department under whom the said Ashley was serving as such police officer, as alleged in the complaint."

Argued before McCARTHY, P. J., and CONLAN and O'DWYER, JJ.

Jones Cochrane, for appellant.
Martin O'Brien, for respondent.

McCARTHY, P. J.    We have examined the merits of this case carefully, and think the judgment appealed from should be reversed, and the demurrer to the second paragraph of the answer overruled. We are convinced by all the authorities examined that this pleads a denial, and therefore the answer is good in that particular.    We think that the demurrer to the counterclaim should be sustained. See Ketcham v. Zerega, 1 E. D. Smith, 553.    Judgment is therefore reversed, without costs to either party as against the other, and the demurrer to the second paragraph of the answer·overruled, and to the counterclaim sustained, without costs to either party.    All concur.

---

(28 Misc. Rep. 106.)

In re TURRELL'S WILL.

(Surrogate's Court, New York County.    June, 1899.)

WILLS—PUBLICATION—FACTS HELD NOT TO SHOW.
    Where the testatrix of a holographic will folded the paper so the witnesses could not see the contents, and did not state to them that the paper under consideration was her will, but designated it as a "document," and one witness did not read the attestation clause, and the other did not know its full purport, and a mere inference, not derived from any words of the testatrix, existed in the minds of the witnesses that the instrument they were signing was a will, there was not a sufficient publication of the will.

Proceedings to probate the last will and testament of Serena D. Turrell.    Probate refused.

Francis W. Judge, for petitioner.
De Witt, Lockman & De Witt, John H. Parsons, Louis B. Adams, and Charles H. Fuller, for contestants.

VARNUM, S.    Probate of the paper alleged to be the will of the decedent is contested on the sole ground that it was not properly executed.    The testatrix was an elderly woman, apparently not on cordial terms with her relatives.    The will to be considered is signed by her, is in her own handwriting, and contains a holographic attestation clause, which is subscribed by two witnesses.    The alleged execution of the will took place on June 28, 1897,'less than two years before the proof was offered.    One of the witnesses, a Mrs. Barnes, the seamstress of decedent, was told by decedent to bring her husband to witness a "document."    On the day named both witnesses attended.    They testify in detail as to various incidents that took

place in the five minutes that they and the testatrix were alone in the latter's apartment. The "document," already signed, was hurriedly produced by decedent; room was made on a crowded table; the paper was folded so that its contents could not be seen, and was placed on the table before the witnesses; and both were told to sign at a place designated by testatrix, under the attestation clause. The signatures were affixed, and the witnesses immediately dismissed. Although it may seriously be doubted whether the witnesses at all saw the signature of decedent to the instrument, enough evidence was presented to support the inference that they did. This being so, it was not necessary for decedent to expressly acknowledge the signature, provided that the will was duly published. In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433; In re Bernsee's Will, 141 N. Y. 389, 36 N. E. 314; In re Laudy's Will, 148 N. Y. 403, 42 N. E. 1061. The only question, therefore, to be considered is whether the testatrix duly communicated the testamentary nature of the paper to the witnesses. Much stress is laid on the fact that the will is holographic. I am aware that this is always a circumstance to be considered as strongly indicative of the absence of fraud or imposition, and as clearly pointing the intention of the testator, and that, consequently, in such a case, the facts of which the alleged publication consists need not be so sharply scrutinized as where the testator's declarations alone are determinative of the question whether he knew the executed paper to be a will. In re Hunt's Will, 110 N. Y. 278, 18 N. E. 106. But the courts do not go further than this. The mandatory terms of the statute requiring the testator to publish his will in no sense except holographic documents, and, although the danger of error in admitting them to probate may be ever so slight, none the less compliance with the statute is absolutely essential. In re Beckett's Will, 103 N. Y. 167, 174, 8 N. E. 506. What evidence have we here before us touching upon the question of publication? The will was always called a "document" by the decedent. Mr. Barnes was very positive as to the preparations made for execution, and as to what happened when he left the room. He could not remember whether or not the testatrix characterized the paper as her will, or made any communication indicating that such was the nature of the document, but he does remember that, after signing the will, he "supposed it was a will by that clause." By this he meant that he had seen a few words in the attestation clause, which he glanced at, out of motives of pure curiosity, while signing his name. Mrs. Barnes also remembers clearly the directions of the testatrix to her and her husband to sign "this document," and that she "surmised" that she was to witness a will, although she could not say whether or not the paper was so designated by the decedent. It is unnecessary to go over the statements of these witnesses in detail. I am satisfied, from all that was testified to at the hearing, that the testatrix did not state to either witness that the paper under consideration was her will. At best, a mere inference or supposition, not derived from any words of the testatrix, existed in the minds of Mr. and Mrs. Barnes as to the real character of the document. It is true that the directions of the statute need not be literally followed,—a "substantial compliance" is sufficient.

Lane v. Lane, 95 N. Y. 499. But this expression should not be loosely used. It means that the testator need not formally, and in so many words, make publication of his will. For example, a reading aloud of the attestation clause before the witnesses, a request to them to read the same, a designation of the instrument connecting it positively with prior testamentary declarations of an intention to execute it,—any of these acts would be sufficient. In re Nelson's Will, 141 N. Y. 152, 36 N. E. 3; In re Beckett's Will, supra. But, whatever the attendant circumstances may be, they must be sufficiently strong to clearly show that the testamentary nature of the instrument was made known to the witnesses by the testator,—that there was an unequivocal meeting of the minds between them and him,—a declaration, however made, but thoroughly understood by all of them. In re Delprat's Will, 27 Misc. Rep. 355, 58 N. Y. Supp. 768; In re Dale's Will, 56 Hun, 169, 9 N. Y. Supp. 396, affirmed in 134 N. Y. 614, 32 N. E. 649. It has been expressly held that it will not suffice for the witnesses to suspect, from the circumstances and occasion, that they are affixing their names to a will (Lewis v. Lewis, 11 N. Y. 220), or to come to this conclusion from an accidental inspection of the attestation clause (Wilson v. Hetterick, 2 Bradf. 427; Walsh v. Laffan, 2 Dem. Sur. 498). In the Wilson Case the will was holographic. The court held the witness cannot be permitted to spell out a testamentary declaration by a hasty glance at a word here and there. "The testator must know that the witnesses know the testamentary nature of the act, and vice versa; and this mutual knowledge must arise from something said, done, or signified contemporaneously with the execution of the instrument." The question to be decided is one purely of fact, with the affirmative resting on the proponent. In re Elmer's Will, 88 Hun, 290, 34 N. Y. Supp. 406; In re Cottrell's Will, 95 N. Y. 329. To my mind, the conclusion is inevitable that decedent failed to declare the instrument offered for probate to be her will. The proponent invokes the rule that where there has been a long lapse of time between the execution and the proof, and the witnesses have no recollection whether or not a testamentary declaration was made, then a complete attestation clause, together with the proof of suggestive attendant circumstances, will take the place of defective memories, and permit of the probate of the will. In re Pepoon's Will, 91 N. Y. 255; Rugg v. Rugg, 83 N. Y. 592. I am of the opinion that this rule has no application to the present case. Although both witnesses testified to a lack of recollection as to whether or not the decedent described the paper as a will, yet their memory is clear that "document" was the designating word, and that they merely conjectured that they were to witness or had witnessed a will. This does not indicate such a failure to remember the circumstances that the attestation clause should be called upon to assist the proponent. But, even if it were otherwise, the above rule would not be applicable. An attestation clause is a certification of the facts recited therein. In re Cottrell's Will, supra. The present clause begins by a recital that the will was signed and sealed on a day designated. This is clearly a misstatement, so far as the witnesses are concerned, for the reason that the paper was already signed when they first saw it. An

untrue recital materially affects the value of an attestation clause. Porteus v. Holm, 4 Dem. Sur. 14; Rumsey v. Goldsmith, 3 Dem. Sur. 494. Again, in the cases where such a clause has played an important part in assisting a will to probate, the witnesses had no recollection as to whether or not they read the clause before signing it, and hence the presumption at once arose that, by reason of their subscription, they knew the contents of the certificate made by them. But here it affirmatively appears that one witness did not read the clause, while the other only glanced at it, and did not know its full purport. Indeed, part of the clause was concealed from view by the fingers of the testatrix. This being the case, the presumption just referred to cannot arise, and the clause becomes meaningless, and of no value whatever. I have considered this case from the various aspects in which it has been presented by the learned counsel for the proponent, but I am unable to see how any contention in favor of the probate of this instrument can properly be supported. Probate is therefore refused.

Probate refused.

---

(28 Misc. Rep. 110.)

## In re STURGES.

(Surrogate's Court, New York County. June, 1899.)

WILLS—BEQUEST IN TRUST—VALIDITY.

    Testatrix bequeathed a fund to the selectmen or other municipal authorities of a parish in a certain town in Massachusetts, in trust for certain purposes. There are no such officers. The town, under the laws of Massachusetts, is entitled to take by bequest, and has its selectmen. Under the laws of Massachusetts the courts of that state could effectuate the intent of testatrix by appointing a competent trustee to administer the gift. *Held* ineffectual to validate the bequest under the laws of New York, which require some person or body personally able or competent to receive and administer the trust.

Proceedings upon an application for an accounting by Thomas Sturges, as trustee of Catherine Sturges, deceased, involving the validity of a bequest by deceased to the selectmen of the East parish of the town of Barnstable, Mass. It was adjudged to be void.

Cowen, Wing, Putnam & Burlingham, for town of Barnstable.

Butler, Notman, Joline & Mynderse, for executor.

VARNUM, S. The application herein was heard by Surrogate ARNOLD, and has now been submitted to me for decision. The testatrix was a resident of this state at the time of her death, which occurred in the year 1877. After bequeathing the income of a certain fund to a certain designated person for life, she gave the fund, upon the death of the beneficiary, to the selectmen or other municipal authorities of the East parish of the town of Barnstable, in the state of Massachusetts, in trust to apply the income, in their discretion, for the relief of respectable native-born persons in reduced circumstances in said parish, who are not wholly dependent upon the town or parish for their support. It appears that there are no such officers as the selectmen of the parish mentioned, and none known as,