(38 Misc. Rep. 471.)

## In re CARLL'S WILL.

(Surrogate's Court, Suffolk County.   July, 1902.)

1. WILL—EXECUTION—PUBLICATION.

On an offer of probate of a holographic will and a holographic codicil, both of which had attestation clauses in the usual form, the subscribing witnesses testified that deceased neither signed them in their presence nor exhibited his signature to them, but that the papers were folded so that only a line or two was left above the lines on which they signed. The entire instrument was in the handwriting of the decedent, and the witnesses knew from previous information that they were sent for to witness the codicil, and testified that the testator told them that he had signed, and that there were only two lines, on which they were to sign as witnesses. The signatures were admittedly genuine. There was no crease which would necessarily have appeared in the will to prevent the witnesses from seeing the signature of the decedent. *Held* sufficient to show the due execution and publication of the will, under Code Civ. Proc. § 2620, providing that, if the witnesses testify against the execution of the will, it may nevertheless be established on proof of handwriting and other circumstances which would prove the will on trial of an action.

2. SAME.

No particular form of publication of will is necessary.

3. SAME.

Where witnesses to a will could have seen the signature of the testator, then legally they did see it.

4. SAME—CODICIL.

Where a will is not duly executed, it is not aided by a duly executed codicil.

In the matter of the probate of the last will of George Carll.   Probate decreed.

Thomas Young (Timothy M. Griffing, of counsel), for proponents.
William G. Nicoll, for contestants.
Asa A. Spear, for legatees.
Theo. D. Dimond, for a legatee.

PETTY, S.   The papers propounded as will and codicil are holographic, and have attestation clauses in the usual form, both of which are signed by the same witnesses.   The contestants, next of kin, claim a failure to comply with the statute as to execution, and the testimony of the subscribing witnesses is to that effect.   Their testimony as to both papers is in substance that the deceased neither signed in their presence nor exhibited to them his signature.   Their failure to see the signatures of the deceased is attributed to the manner in which the papers were folded, as each testifies that they were so folded that only a line or two was left above the lines upon which they themselves signed.   A failure of publication is also claimed as to the second paper, and on this point the witnesses agree that at no time did the deceased call or declare it a codicil.

Upon the testimony of the subscribing witnesses the papers would fail of probate, but this testimony is not necessarily conclusive; the statute providing:

"If such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will; the will may nevertheless be established,

upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances, as would be sufficient to prove the will upon the trial of an action." Code Civ. Proc. § 2620.

It is under this statute that numerous wills have been admitted to probate despite adverse testimony of subscribing witnesses. The statute in terms contemplates that proof which would satisfy a jury of the regularity of the will, and whether that proof is produced is the issue herein. Under the statute of wills, the testator's subscription must be made in the presence of each of the attesting witnesses, or acknowledged by him to have been so made to each of them, and, at the time of making such subscription or acknowledgment, he must declare the instrument so subscribed to be his last will and testament. 2 Rev. St. p. 63, c. 6, art. 3, § 40. Under this, and the statute first herein quoted, the issue is entirely one of fact. In re Turell's Will, 166 N. Y. 330, 336, 59 N. E. 910. Taking up first the codicil, I am satisfied that the proof offered is sufficient to admit it to probate. The entire instrument, including the attestation clause, is in the handwriting of the deceased. According to the testimony of the subscribing witnesses, they knew from previous information that they were sent for to witness a codicil. As the witness Carll says, "It was understood between he and I what we were to sign." Both witnesses and the deceased knew that their meeting was for the sole purpose of executing a codicil; and, this being so, the words of the deceased, "It lays there on the desk; I have signed it, and there are only two lines left; you sign it on one, and Frank on the other,"—constitute a sufficient request and publication.

The statute prescribes no form for the publication of a testament; any communication by the testator whereby the witnesses understand that which the statute requires is sufficient. As was said in Re Beckett's Will, 103 N. Y. 167, 174, 8 N. E. 506, a case in which the testatrix made no reference to the instrument other than to call it a paper:

"It is entirely certain that the testatrix understood the character and contents of the paper which she executed, that she did exactly what she intended to do, and without the possibility of mistake or imposition; for the will was a holograph. * * * In such a case, criticism of the terms and manner of what is claimed to have been a sufficient publication need not be so close or severe as where the question whether the testatrix knew that she was executing a will depends solely upon the fact of publication. * * * He must communicate it, however; but if he does that in a manner capable of conveying, to the minds of the witnesses, his own present consciousness that the paper being executed is a will, that must necessarily be sufficient."

The statute is therefore satisfied as to publication. Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235; Lane v. Lane, 95 N. Y. 494, 498.

The above circumstances also provide the statutory acknowledgment if the signature of deceased was visible. The subscribing witnesses testify that this was not the case, owing to folds in the paper. The will and codicil are written on a sheet of ordinary legal cap, occupying the first three pages according to the manner in which such paper is ordinarily used. On the last two lines of the third page are the signatures of the witnesses; on the next two above is the attestation clause; and on the fifth from the bottom is the signature of the

deceased. All signatures are admittedly genuine. The paper was folded twice in the usual manner when prepared for backing, and then folded again, according to the statements of the subscribers, so as to exclude from their view the signature of the deceased. One of two things must be true. The paper was so folded as to make a crease between the fifth line from the bottom and the last two,—in other words, between the signature of the deceased and the signatures of the witnesses,—or some other portion of the paper overlapped the decedent's signature. The paper having been thus folded, and so as to make it remain flat on the desk, the crease would necessarily appear in the paper had it been made. Nothing in any way approaching such a crease appears. For the crease to have been made and later removed is a physical impossibility. Neither witness, when asked, attempted to explain its absence. As to the other alternative, a physical test made by folding a sheet of legal cap twice, as for backing, and then a third time in the same manner, will show that it is impossible to keep it flat and folded without the aid of a weight, no matter how vigorous the folding may be. Under such a test, the paper will invariably unfold. Further, the witnesses are unable to specify just how the folding occurred so as to exclude the signature, so that the manner is purely speculative. They are testifying, also, to an event occupying but a moment, and occurring nearly seven years before, with confessedly nothing special to fix it in their minds. The testimony of the witness McCabe is to the effect that she was present when the codicil was written and signed, prior to the coming of the witnesses, and that she saw it open, as it lay on the desk for the witnesses, though folded once or twice, with the signature of decedent and all below it in full view. Her testimony is attacked as that of one interested, she being a legatee under the codicil. The renunciation of her legacy qualifies her as a witness, however, and, while she may in fact retain an interest in the probate of the instrument, this is not sufficient to warrant an entire disregard of her testimony. Her testimony in various details, such as going in and out of the room, and answering the call of the deceased at the time in question, is corroborated by the testimony of the witness Gardiner. Upon all the evidence, I am satisfied that the signature could have been seen, and, if the witnesses could see, then, legally, they did see. In re Laudy's Will, 161 N. Y. 429, 433, 55 N. E. 914; In re Stockwell's Will, 17 Misc. Rep. 108, 40 N. Y. Supp. 734.

I have considered first the codicil, by reason of the contention that it, if valid, carries the will to probate without further consideration. I believe the true rule to be, however, that a valid codicil can be called to the relief of a prior will only when the will was itself executed pursuant to statute. There are various reasons which render void a duly executed will. Such a will may be revived by a subsequently executed codicil, but the rule does not apply unless the will itself was executed as the statute directs. In re Andrews' Will (Sup.) 60 N. Y. Supp. 141; Cook v. White, Id. 153. The will must therefore be considered by itself. On the morning of the day on which the will was signed, the deceased, having told the witness Carll that he had made his will, requested him to go to Baldwin's with him, so that he and Baldwin

might sign it as witnesses. On the way, in response to the remark by the witness Carll that Baldwin might not have pen and ink, the deceased replied: "I always go prepared for business. I have got the tools with me." On their arrival at Baldwin's, a request that they act as witnesses is fairly made out. The witness Baldwin testifies:

"Mr. Carll asked how I was. I told him, and he asked me, as he took the paper from his pocket, if I would sign his will as a witness, and I told him I would. Mr. Henry P. Carll signed it, and then I signed it. Q. When he spoke as to having you sign it, I suppose he was addressing you and Henry both. That is the way you understood it? A. Yes, sir."

The body of the will and the attestation clause is in one kind of ink. The three signatures thereto are in ink of a totally different kind. This is apparent to the naked eye, and is confirmed by examination under a magnifying glass, as well as by the testimony of the expert Kinsley. This witness testifies that the ink in the three signatures is the same; that the signatures were made at one and the same time; and that the poor appearance of the ink in the signatures is the result of its having been frozen. In this connection, the witness Baldwin says he had ink at hand at the time in question, which was customarily kept in a bureau in an unheated hall, but cannot say positively whether this was the ink he used in signing the will or not; he having used this ink for some other business earlier in the day. Testimony is also offered to show that the deceased had but one bottle of ink, and that it was kept in his desk where he wrote the will, and in a heated room. The witnesses say they both used the same pen. They also testify that there was some writing above the point at which they signed, but that they neither saw nor tried to see what it was. Seven lines of attestation clause intervene between the signature of the deceased and the signatures of the witnesses. They are unable to explain just how the folds in the paper covered his signature; in fact, their testimony in this regard amounts to this only: that the paper was folded. They admit that they knew nothing of the statutory requirements, and the entire transaction occupied but a few moments of their time, with nothing to impress the matter on their minds. How their memory, on points which they did not know were important, can be so good after the lapse of nearly seven years, does not appear. The will being folded, as was the codicil, according to their testimony, I reach the conclusion again that the paper could not have rested flat on the table, but must have opened to a considerable extent. I also reach the conclusion that the deceased signed the paper at Frank Baldwin's. His signature is shown to be genuine. He was a man of mature years, of business ability and repute in the county, and conversant with the drawing of wills. That the witnesses wrote their addresses after their signatures because told so to do by decedent, knowing no reason themselves why this should be done, is significant in this connection. At least one will drawn by him has been admitted to probate. After his death, the document was found in his private box. His remarks as to having the tools with him, coupled with the very full attestation clause in his own hand, show that it was his intention to

sign at Baldwin's. The testimony that he wrote the body of the will in the morning of the day on which the witnesses signed is of the greatest significance. But a few hours intervened between this writing and the meeting at Baldwin's. Had the deceased signed the paper before leaving his house for Baldwin's, his signature would be in the same ink as the body of the will; just as in the codicil, which was written and signed by him before the witnesses came, we find the body of the instrument and his signature in the same ink. We find his signature to the will, however, in the same ink as that used by the witnesses; the difference between it and the ink in the body of the instrument being so marked that mistake in this regard is impossible. "Looking at the substance of what occurred, and giving great importance to the fact that the will was a holograph" (In re Beckett's Will, 103 N. Y. 167, 176, 8 N. E. 506), I believe a jury would be warranted in finding as fact that the witnesses are honestly mistaken, and that both will and codicil were duly executed. The facts in the Cottrell Case, 95 N. Y. 329, do not appear to be stronger than these. Peebles v. Case, 2 Bradf. Sur. 226. The cases cited by contestants do not, as I believe, become authorities until the question of fact is found in accordance with the testimony of the subscribing witnesses. While the case may be said to be a close one, and the contest reasonably brought, it is still, I believe, a fair finding of fact that the papers were properly executed. This being so, it is the duty of the trial court to admit it to probate; leaving opportunity for actual trial by jury, if it be deemed advisable, under the practice. Code Civ. Proc. § 2588. The will and codicil will therefore be admitted to probate.

Probate decreed.