Surrogate's Court, Albany County, May, 1919. [Vol. 107.

civil cases cited in support of this motion do not apply
to the case at bar, which is a criminal charge of forgery
prosecuted not by any party to the transaction but by
the People of the State. The civil cases merely adopt
a rule of law as to which of the innocent parties the
loss shall fall upon. They turn upon the intent of the
drawers or payors of the check and on the doctrine of
estoppel. The doctrine of estoppel does not apply to
the People in a criminal action. *People* v. *Walker*, 85
App. Div. 556. And the controlling intent in a crim-
inal action is the intent of the defendant and not of
those with whom he dealt.

The Penal Law provides (§ 880) that the expressions
" forge," " forged " and " forging " include the false
making and counterfeiting of a genuine instrument or
the false making or counterfeiting of the signature of
a party or witness. This definition covers the act of
the defendant and the question as to who shall bear
the ultimate loss occasioned by his act as determined
in the civil cases cited does not change his act. For
the above reasons the motion is denied.

Motion denied.

---

Matter of the Probate of the Last Will and Testament
of ADAM WINNE, Deceased.

(Surrogate's Court, Albany County, May, 1919.)

Wills — execution of — preponderance of proof — when probate decreed
— witnesses — evidence:

Where in a contested probate proceeding it appears that the
will is in usual form, signed at the end with the regular attesta-
tion clause following, signed by the subscribing witnesses, and
the direct testimony of the two subscribing witnesses taken by
deposition shows all the facts essential to the valid execution

of the will, probate will be decreed although upon cross examination the memory of one witness is not clear as to when the will was signed and the other subscribing witness testifies at one time that it was signed by testator before the witnesses had signed it and at another time after the witnesses signed it.

PROCEEDING upon probate of a will.

John A. Delehanty, for Charlotte Fisher, petitioner.

Daniel H. Prior, for George W. Winne, contestant.

STALEY, S.   Adam Winne died in the city of Albany on the 10th day of March, 1919, leaving his widow, Lottie Winne, and one son, George W. Winne, him surviving.

A paper purporting to be his last will and testament and bearing date the 17th day of October, 1918, has been presented for probate and objections thereto have been filed by his son, alleging that the said paper is not his last will and testament and that the same was never executed pursuant to the requirements of the statute.

The only witnesses examined were Howard M. Hotaling and Henry Kies, the two subscribing witnesses, and Francis Shields.  The direct testimony of the two subscribing witnesses was taken by deposition setting forth all the facts essential to a valid execution of the will.  They were then cross-examined orally. The paper propounded is in the usual form of a will, signed at the end by the testator, with a regular attestation clause following, signed by the subscribing witnesses.

The contestant urges that the evidence fails to establish two necessary steps in the execution of a will; one, its publication, and the other, its proper attestation by the witnesses, because of the order in point of time in

Surrogate's Court, Albany County, May, 1919. [Vol. 107.

which the testator and the two witnesses signed the paper.

The subscribing witnesses were neighbors of the testator and had known him for many years and one had witnessed, about three years before, a previous will for the testator. Shortly before the paper propounded was signed, the testator met Mr. Kies on the street and said to him, "Hank, I am going to make a will. Will you sign it?" and when assured that he would, the testator said: "When I get ready, I will have the *paper.*" A conversation almost similar was had with the other witness, Mr. Hotaling, and at about the same time.

The witness Shields testified that in October, 1918, he had in his possession the paper now offered as the will of the testator; that he read it to the testator and asked him if that was the way he wanted it, to which the testator replied, "It is all right;" that he then gave it to the testator and told him when he signed the will to read the attestation clause to the witnesses and to sign the will in their presence.

On the evening of the execution of the propounded paper, the testator went to the home of Mr. Kies and said to him, "Hank, I have got that *paper;* we will go down to How's" (meaning Hotaling's). On the way to Hotaling's house, the testator said: "Hank, this is my last will." When the testator and Mr. Kies met Mr. Hotaling at his house they went up stairs and the testator said: "How, I have got that *paper* here," and it was then signed.

The requirement of publication of a will is to prevent fraud and imposition upon the testator by procuring him to execute and acknowledge a will under pretense that it is a paper of a different nature. Publication is accomplished if the acts done and the words spoken convey to the minds of the witnesses an under-

standing on the part of the testator of the character of the paper executed. *Trustees* v. *Calhoun,* 25 N. Y. 422.

The testimony here clearly established that the witnesses understood and that the testator understood the paper which was executed to be his will and that he desired and requested them to act as witnesses thereto and substantially so declared at the time of its execution.

This conclusion is supported by the decision in *Matter of Beckett,* 103 N. Y. 167, in which it was held that a sufficient publication was accomplished where at the time of the execution of the will the testatrix said to one witness: " this is the paper I spoke to you about signing," referring to a former conversation in which she had stated that she was going to make a will which she wished the witness to sign as a witness and which the latter had promised to do.

Here, as in the *Beckett* case, it is urged that a valid publication must be complete at the time of the execution and cannot be dependent upon prior facts or circumstances, and upon this point Judge Finch, in the opinion in *Matter of Beckett,* at page 176, said: " But it is objected that a declaration dependent upon a previous conversation for its meaning will not answer the requirement of the statute, and that the words of publication must at the time be complete in and of themselves.  It may be that an imperfect and indefinite publication cannot be made sufficient by proof of a previous conversation not connected with the *factum* by the words of publication used.  But here they were so connected by the very language of the testatrix at the time of execution.  She herself so referred to the previous conversations, so connected them with the paper then present, as to make them an essential part of the communication, almost as completely as if she had formally repeated them."

26

Surrogate's Court, Albany County, May, 1919. [Vol. 107.

The testator told the witnesses, two or three weeks before, that he was going to make a will and asked them if they would sign as witnesses, and said: "When I get ready, I will have the *paper*." At the time of the execution, he stated to each witness: "I have got that *paper*." There was no conversation between the testator and the witnesses between the time of the request to sign his will and the time of the execution of it and no conversation between them as to any other paper except his will. His declaration as to "that *paper*" at the time of the execution of the will was equivalent to a statement "I have that will," and was so understood by the witnesses and was a sufficient indication of the testamentary character of the instrument executed, and substantially complied with the requirements of the statute as to publication. *Matter of Marley,* 140 App. Div. 823.

The further contention is made by the contestant that the evidence fails to establish that the will was subscribed by the testator in the presence of the witnesses until subsequent to the signatures thereto of the subscribing witnesses and, by reason thereof, the attestation of the will by the witnesses was defective and invalid. It would seem the subscription of a will by a testator after the witnesses have signed their names to it is not a due execution and, if the evidence clearly establishes that to be the fact, the execution is fatally defective. *Jackson* v. *Jackson,* 39 N. Y. 153; *Sisters of Charity* v. *Kelly,* 67 id. 413.

The subscribing witnesses, on their direct examination, each, by deposition, in open court, testified that the testator Adam Winne, on the date of the will, signed his name, in their presence, at the end of said instrument and declared the same to be his last will and testament, and thereupon, at his request and in

his presence, they signed their names as attesting witnesses thereto.

The witness Hotaling testified upon his cross-examination that the testator had been at his house probably five minutes before he (the testator) signed the will, and almost immediately thereafter, testified that he didn't think the testator signed any paper while he was there. The witness Kies first testified that the testator did not sign the will in the presence of the witnesses and then immediately corrected himself, said he was mistaken and that the testator signed his name "Adam Winne" when they were in Hotaling's house; and later this witness stated that the testator signed the paper after he and Hotaling signed it. The genuineness of the signature of the testator and the witnesses is fully established and the paper expresses the intent of the testator as declared prior to its execution to the witness Shields.

Section 2612 of the Code provides, in part, that " if a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, or was not present with the other witness at the execution of the will; the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action.''

A will properly signed by the testator and witnesses, with proper attestation clause, will not fail of probate because of the bewildered memory of surviving witnesses as to order of signing or as to declaration by the testator. *Matter of Clark*, 167 N. Y. Supp. 161.

From the circumstances attending the execution, the inferences and presumptions which may legally be logically and reasonably drawn therefrom, and the weight to be given to the oral examination of the wit-

nesses because of their contradicting statements, I conclude that the preponderance of proof is in favor of the due execution of the will and that the same should be admitted to probate.

Probate decreed.