there is none except the mutual promises, but there is no payment and no delivery and no writing, except a writing that raises the presumption that no such property interest exists as that claimed through the parol agreement. So I find no principle of law permits one tenant in common of property to tender evidence that an instrument that the law says carries distinct title to each of the two persons, with a common possession, did no such thing, but carried joint title and common enjoyment to both living and to the survivor, or that a gift or sale was made by each to the other conditioned upon survivorship and taking effect at the death of one of them. Hence this judgment should be modified so as to vest the title to the husband's one-half interest in his executor, and, as so modified, affirmed, without costs.

---

### In re MORLEY'S (or MARLEY'S) WILL.

(Supreme Court, Appellate Division, Third Department. November 16, 1910.)

1. WILLS (§ 303*)—ADMISSION TO PROBATE—EVIDENCE OF EXECUTION.

   The circumstances surrounding the execution of a paper showing that it was executed as a will, it may be admitted to probate against the testimony of all the subscribing witnesses, or on the testimony of one and against that of the other.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

2. WILLS (§§ 118, 119, 120*)—PUBLICATION, ACKNOWLEDGMENT, AND REQUEST TO WITNESS.

   There is a sufficient publication of a will, acknowledgment of testator's signature, and request to sign as a witness, where testator produces a will written and signed in his handwriting, and says to one, whose will testator had, some time before, witnessed, "I would like you to sign this paper. This is the same kind of paper that you asked me to sign for you," and such person understood testator to ask him to sign his will as a witness, and he did so directly under the attestation clause, in testator's presence, seeing and recognizing testator's signature, with which he was perfectly familiar.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 302–317; Dec. Dig. §§ 118, 119, 120.*]

3. WILLS (§ 303*)—DECLARATION TO SUBSCRIBING WITNESS—EVIDENCE.

   The surrounding circumstances *held* sufficient evidence to authorize a finding that testator did declare to a person that a certain instrument was his will, and requested him to sign it as a subscribing witness, notwithstanding the testimony to the contrary of such person, whose name appeared on the instrument as such a witness.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 722, 723; Dec. Dig. § 303.*]

   Kellogg and Cochrane, JJ., dissenting.

Appeal from Surrogate's Court, Rensselaer County.

In the matter of the probate of the last will and testament of Matthew Morley or Marley, deceased. From a decree denying probate to a paper propounded as the last will and testament of deceased, Edward Buckman and another appeal, William G. Marley and others being the respondents. Reversed and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SE-WELL, and HOUGHTON, JJ.

Clarence E. Akin, for appellants.

Scott & Tiffany, for respondents.

HOUGHTON, J.　The paper propounded as the last will and testament of William Morley or Marley, deceased, is wholly in his handwriting, including the attestation clause, and it is undisputed that his signature appears at the end, and that the signatures of two witnesses follow the attestation clause.　On its face it appears to be a properly executed will.

Although the learned surrogate wrote no opinion and made very broad findings against the due execution of the paper as a last will and testament, he manifestly denied probate on the ground that the alleged testator's signature, which had been previously affixed, was not exhibited to the witnesses and acknowledged by him as such at the time of the witnessing and execution.　The two witnesses which the alleged testator selected were his friend Buckman, whom he named as executor, and his nephew, Clayton E. Marley.　Marley testified on the hearing for probate that his signature which appears directly under that of Buckman at the foot of the attestation clause is genuine, but that, when he signed his name, the testator asked him to sign a paper, saying nothing about the witnessing of a will, and that he put his signature to a clean sheet of unfolded foolscap paper upon which there was no writing whatever and upon which the signature of Buckman did not appear.　This testimony is so preposterous that it cannot be regarded as truthful by any court, and presumably the surrogate did not believe it.　The bare fact that his genuine signature appears at the foot of the attestation clause and under that of Buckman contradicts his story and outweighs his evidence.

While the statute requires certain formalities in the execution of a will, such an instrument is not to be defeated because the testator chanced to select forgetful or untruthful witnesses.　If the circumstances surrounding the execution of a paper show that it was executed as a last will and testament, it may be admitted to probate against the testimony of all the subscribing witnesses (Matter of Will of Cottrell, 95 N. Y. 329), or upon the testimony of one and contrary to the testimony of the other (Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422).

Eliminating the testimony of the witness Marley it becomes necessary, therefore, to analyze the testimony of the other witness Buckman and determine whether or not sufficient appears from his evidence to justify the finding that the testator acknowledged his signature to the instrument and properly declared it to be his will when he requested him to sign it as a witness.　Buckman and the deceased had long been intimate friends.　Some time before the attempted execution of the paper by the deceased, Buckman had made his will and had asked the deceased to subscribe it as a witness, which he did, and the occurrence was clearly remembered by both.　After the deceased had prepared and signed the paper in question, he produced it to Buckman, and said: "I

would like you to sign this paper. This is the same kind of a paper that you asked me to sign for you." The witness testifies that he understood the deceased to ask him to sign his last will and testament as a subscribing witness, and that he did sign the paper directly under the attestation clause, in testator's presence, and saw and recognized the testator's signature, with which he was perfectly familiar, at the time of so doing.

We are of opinion that what took place was a sufficient publication, acknowledgment of signature, and request to sign as a witness to meet the requirements of the statute. The requirements of the statute as to the publication of wills which are holographic are not so close or severe as where the question whether the testator knew he was executing a will depends solely upon the fact of publication. Where a testator produces a holographic instrument and declares to a witness that it is the paper which the testator had previously spoken to the witness about witnessing, and which previous conversation referred to the making of a will which the testator desired the witness to attest, it is a good publication and request. Matter of Application of Beckett, 103 N. Y. 167, 8 N. E. 506. If such a publication and request be good, the publication and request in the present case was amply sufficient. There can be no question but what the testator desired to execute his will and to comply with the law in so doing. When the testator told the witness that he wanted him to sign the same kind of a paper that he had signed for him, both the testator and the witness clearly understood that the paper referred to was the will of the witness which the testator had attested. So far as the understanding between them was concerned, the publication and request was as complete as though the testator had declared the instrument in the most solemn manner to be his last will and testament, and requested Buckman to sign as a subscribing witness thereto. The purpose of requiring the declaration of a testator that the instrument is his last will and testament is to make it certain that he knows he is executing such an instrument, and not one of some other kind. Trustees of Auburn Seminary v. Calhoun, supra. This purpose of the statute was entirely fulfilled by what took place when Buckman signed as a subscribing witness to the instrument in question. Although the alleged testator did not declare his signature at the end of the instrument to be his, and said nothing concerning it, there was in law an acknowledgment of his signature by him. Where a testator produces a previously signed will, and particularly a holographic will, and requests the witnesses to attest it as his last will and testament, and especially if they observe and recognize his signature, there is a sufficient acknowledgment of such signature and subscription by him. Matter of Akers, 74 App. Div. 461, 77 N. Y. Supp. 643, affirmed 173 N. Y. 620, 66 N. E. 1103, on opinion below; Baskin v. Baskin, 36 N. Y. 416; Matter of Hunt, 110 N. Y. 278, 18 N. E. 106; Dewey v. Dewey, 1 Metc. (Mass.) 349, 35 Am. Dec. 367.

The testimony of the witness Buckman therefore made a prima facie case entitling the will to be admitted to probate, providing it can be assumed from the surrounding facts and circumstances that there was a publication of the instrument as to the other witness Marley, and a

request that he sign as a subscribing witness. If the witness Marley were dead, there would be no difficulty in assuming that the formalities of the statute were complied with so far as he was concerned. While the attestation clause is complete, it appears from the testimony of Buckman that it is not entirely accurate, for it recites that the will was subscribed in the presence of the witnesses, whereas it should have stated that the signature was acknowledged. The instrument being already signed when Buckman was requested to witness it, it must have been signed when Marley was requested. Its production by the alleged testator so signed with a request to witness being equivalent to an acknowledgment of signature, the only proof necessary, notwithstanding the denial by the witness Marley, is whether the deceased did in fact state to Marley that it was his will, and request him to sign it as a subscribing witness. Ordinarily proof that the requirements of the statute were observed in the execution of a will comes from the testimony of the subscribing witnesses if they be living and their testimony can be procured; but the fact that such requirements were observed may be proved by other evidence the same as any other question of fact may be established. Matter of Cottrell, supra. The surrounding circumstances are sufficient contradiction of the positive testimony of Marley to make a question of fact, and to justify a finding that the testator did declare the instrument to be his will, and request him to sign it as a subscribing witness. The deceased was a man of intelligence and acquainted with business affairs. The will is in due form, and the attestation clause immediately following his own signature is full and accurate, except in the particular referred to. When he wrote it, he either knew what formalities in the execution of a will were necessary, or, in copying it from a form, he was apprised of the requirements of the statute. The most of his life he had been a bachelor, but had recently married, and presumably knew that his real estate would not pass to his wife without a will to that effect. The body of the will shows care in its preparation and acquaintance with legal phraseology. Evidently there was some question as to the spelling of his name either in the deed of his house and lot or in the insurance policy which he mentioned, and he took pains that there should be no complications on that score, and described himself, not only in the will, but by his signature as either "Morley" or "Marley." He selected and used the word "devise" with respect to his house and lot. All the circumstances show beyond question that he had gone about the business of executing a will with deliberation and care and forethought, and in some manner had acquired knowledge of the formalities required by statute in its execution. The paper was kept by him amongst his valuable papers. On its face it is entirely regular, and conclusively refutes the statement of Marley that, when he signed his name, he did so to a blank piece of paper upon which there was no writing whatever, because his signature is directly under the attestation clause and under that of Buckman, the other subscribing witness. If the witness is untruthful as to where his signature was placed, as he manifestly is, there is no reason why he should not be deemed untruthful when he says that the testator did not say that the paper was his will, and request him to sign it as a subscribing witness.

In our opinion the decree denying probate should be reversed and the material questions passed upon by a jury.

Decree reversed, and a new trial granted before a jury upon issues to be framed, with costs to the appellant against the respondents to abide the event. All concur, except KELLOGG and COCHRANE, JJ., who dissent.