Eugene N. L. Young, of Long Island City, for the motion.

Matthew J. Smith, of Long Island City, Dist. Atty., opposed.

JENKS, P. J. We adhere to our judgment in this case reported in 144 App. Div. 282, 129 N. Y. Supp. 247. We followed People v. Griffin, 27 Hun, 595, decided by the General Term in this department, opinion by Cullen, J., with whom Barnard, P. J., and Dykman, J., concurred. We think that People v. Bauer, 37 Hun, 407, so far as it conflicts with People v. Griffin, should not be followed. The sole authority cited in People v. Bauer, supra, is People v. Bork, 96 N. Y. 188, 201.

The decision in that case upon the question presented in the case at bar, in Griffin's Case, and in Bauer's Case, supra, rests upon a construction of chapter 226 of the Laws of 1863, which, as the Court of Appeals in Bork's Case, supra, say, provides that the court to which the record is remitted is to pass such sentence as the appellate court shall direct, and this provision, the court further say, does not require the appellate court "to fix the time of imprisonment, or to itself exercise a discretion in respect to punishment given by the statute" and that the Court of Appeals conforms to the statute when it "points out the law providing for the punishment and directs the court below to sentence thereunder." The court also pointed out that the statute of 1863 had never been repealed in terms, and held that it was continued in force as a rule of procedure in respect to actions pending when the Code of Criminal Procedure took effect.

Bork was convicted in June, 1881, and the said Code took effect in September, 1881. Section 963, Code of Criminal Procedure. Thus it appears that Bork's Case was not an authority for the decision in People v. Bauer, supra, for Bauer was indicted in 1885. Our judgment in this case, reported in 144 App. Div. 282, 129 N. Y. Supp. 247, has been followed, with citation thereof and of People v. Griffin, supra, by this court in its First Department in People v. Scheuren, 148 App. Div. 324, 132 N. Y. Supp. 1025.

The motion for reargument is denied.

---

(155 App. Div. 575.)

## In re KEEFFE'S WILL.

(Supreme Court, Appellate Division, First Department. March 20, 1913.)

WILLS (§ 117*)—EXECUTION—VALIDITY.

Under Decedent's Estate Law (Consol. Laws 1909, c. 13) § 21, subd. 2, providing subscription shall be made by the testator in the presence of each of the subscribing witnesses, or shall be acknowledged by him to have been so made to each of them, a will was not validly executed where testator's subscription was not made in the presence of all of the witnesses, and only one of them was shown the signature above the attestation clause which included the testator's name.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 299–301; Dec. Dig. § 117.*]

Clarke and Laughlin, JJ., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of proving the last will and testament of Matthew J. Keeffe, deceased, as a will. Appeal by contestants from a decree of the Surrogate admitting the document to probate. Reversed.

See, also, 141 N. Y. Supp. 1125.

The opinion of Surrogate Cohalan, referred to in the dissenting opinion, is as follows:

"Estate of Matthew J. Keeffe. Upon consideration of the testimony in this case and after an examination of the exhaustive brief of the counsel for the contestant, I am of the opinion that there was a substantial compliance of the statute in the execution of the paper propounded as the last will and testament of Matthew J. Keeffe, that the testator had testamentary capacity, that he was not under any restraint, and that he was not unduly influenced in the execution of said paper. Submit on notice, decision, and decree admitting will to probate, and tax costs."

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward W. Drucker and Richard J. D. Keating, both of New York City, for appellant.

Maurice B. Rich, for respondent.

SCOTT, J. The contestant-appellant opposed the granting of the probate upon several grounds, but the only one we consider it necessary to discuss is that which calls in question the sufficiency of the execution of the alleged will.

The facts are simple. The document was drawn by the deceased himself, a layman, upon a printed form such as can be purchased from any law stationer. The blanks were filled in by the testator in his own handwriting, and he signed his name at the end. Following his signature was the usual attestation clause reading, "Subscribed by Matthew J. Keeffe, the testator named in the foregoing will * * * "—the name of the testator being written in his own handwriting. There were two witnesses neither of whom saw the testator sign the document, and who did not themselves witness it at the same time and in the presence of each other. In this respect the recitation in the attestation clause was incorrect.

James L. Keegan, who was the first witness to sign went to testator's house in the evening, and the testator said to him: "Jim, this is my will, I would like to have you sign it." He then handed the will to Keegan so folded that the latter part of the will proper, the signature, and the attestation clause were visible. Keegan testifies that at that time he saw the testator's signature at the end of the will, but did not notice his name written into the attestation clause. He signed at the bottom of the attestation clause without reading it.

John S. Simons was the second witness. His testimony is that he called on testator at his house, and that after some conversation on other subjects the testator passed the paper over to him, and said: "John, there is my will. Will you sign it?" Simons said: "Yes, I guess so. I suppose it is a will." Testator said, "Yes, see my signature." Simons replied, "Yours and Keegan's." Testator said, "Yes," and Simons said, "They are good enough for me," and thereupon

signed. Upon further examination of this witness it clearly appears just what happened. When the deceased handed the paper to Simons, it was so folded that the testator's signature at the end of the will was not visible; only the attestation clause being visible. The witness did not see Keeffe's signature at the end of the will, but saw only the attestation clause, and it is testified positively by him that what he referred to in the earlier part of his examination as Keeffe's signature, and the only thing of the kind which he saw, was Keeffe's name written into the attestation clause.

Under this state of facts, as to which there is no contradiction or manner of doubt, we are of the opinion that the probate cannot be upheld. The will must be sustained, if at all, under the second sentence of subdivision 2, § 21, Decedent's Estate Law (Consol. Laws 1909, c. 13) reading as follows:

"Such subscription shall be made by the testator in the presence of each of the subscribing witnesses, or shall be acknowledged by him to have been so made to each of the subscribing witnesses."

The will was not signed in the presence of either witness. To be validly executed, therefore, the subscription, not the will, must have been acknowledged to each of the witnesses. An acknowledgment to one will not do.

The rule as to acknowledgment is laid down in Matter of Laudy, 148 N. Y. 403, 407, 42 N. E. 1061, 1062, as follows:

"In the matter of the probate of the last will and testament of James Mackay, deceased, it was held that subscribing witnesses to a will are required for the purpose of attesting and identifying the signature of the testator; and in order to do that it is essential that they should see the testator subscribe his name, or that *with the signature visible* to them he should acknowledge it to be his."

Matter of Mackay, 110 N. Y. 611, 18 N. E. 433, 1 L. R. A. 491, 6 Am. St. Rep. 409, was much like the present. The testator called the witnesses and presented to them a paper which he said was his will and that he wanted them to sign it. It was folded in such a way that they did not see the signature. Held that the acknowledgment was insufficient; the court saying:

"Subscribing witnesses to a will are required by law, for the purpose of attesting and identifying the signature of the testator, and that they cannot do unless at the time of the attestation they see it"—citing, also, to the same effect, Lewis v. Lewis, 11 N. Y. 221, and Mitchell v. Mitchell, 16 Hun, 97, affirmed 77 N. Y. 596.

A dictum to the contrary in Willis v. Mott, 36 N. Y. 486, is distinctly overruled.

This case is distinguishable from those in which one witness cannot distinctly remember that all the necessary formalities were complied with. Matter of Turell, 166 N. Y. 330, 59 N. E. 910. Here the evidence is direct and positive that, as to one witness, the necessary formality was not complied with. The fact that the testator's name was written in the attestation clause in his own handwriting, and that the name was visible to the witness Simons when he signed as witness, does not satisfy the requirement that the *signature* must be visible,

for it is quite evident that that word was not intended by the testator as his signature to the will.

In Matter of Booth, 127 N. Y. 109, 27 N. E. 826, 12 L. R. A. 452, 24 Am. St. Rep. 429, the testatrix, a resident of New Jersey, attempted to make a holographic will commencing, "If I, Cecilia L. Booth should die," etc. She did not sign it at the end. The court assumed that the common law prevailed in New Jersey, and recognized the rule that at common law, if a person wrote his name anywhere in the body of a will, with intent to execute it, the signature was as valid as if subscribed at the end. It was held, however, that in order to have this effect the name must have been written with intent that it should act as a signature. The court said:

"Wherever the name of the testator appears, whether in the body or at the end of a will, it must have been written with intent to execute it; otherwise it is without force. When a testator, or the maker of a contract, subscribes it at the end and in the manner in which legal instruments are usually authenticated, a presumption arises that the signature was affixed for the purpose of creating a valid instrument. But when the name is written near the beginning of the document, where, as a rule, names are inserted by way of a description of the person who is to execute it, and rarely as signatures, it must, before it can be held to have been inserted for the purpose of validating the instrument, be proved to have been written with that intent."

The internal evidences, derived from the document itself, are convincing that Keeffe had not written his name in the body of the attestation clause with the intent that it should be the signature to his will. He had already signed it, at the appropriate place at the end of the document. The insertion of his name in the attestation clause was evidently merely for the purpose of identification. It cannot be regarded as his signature to the will, which under the statute it was essential should be visible to each witness, at the time he witnessed the document.

The decree of the Surrogate's Court must be reversed, and the prayer of the petitioner denied, with costs and disbursements in this court to the appellant, payable out of the estate.

INGRAHAM, P. J., and McLAUGHLIN, J., concur. CLARKE, J., dissents. LAUGHLIN, J., dissents on the opinion of Surrogate Cohalan.