es are concerned if not therein denied. Fleischmann v. Stern, supra; Empire Trust Co. v. Magee, supra.

[4] The allegations which the defendants have been required to make more definite and certain are to the effect that, if the decedent executed the agreement, he was authorized so to do by the United Silk Manufacturing Company or it duly ratified and confirmed the contract. The application to have those allegations made more definite and certain was clearly frivolous, and entitled to but scant consideration. It is quite immaterial to the plaintiff whether the decedent was authorized to make the contract when he signed it, or whether the company subsequently ratified his act. The only materiality of these allegations is to show that defendants could have performed but for the bankruptcy proceedings and perhaps to show that the plaintiff knew that the decedent had not acquired title at the time the contract was made and might be unable to obtain title, which, however, is not alleged. The complaint does not show whether or not the contract was in writing; but it is alleged in the complaint that the decedent made the contract, and it is not alleged in these separate defenses that in making it he was acting as agent for the United Silk Manufacturing Company; and therefore there is no necessity that the allegations be made more definite and certain, on the theory of requiring him to state whether he made the contract as principal or as agent.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

## In re LEVENGSTON'S WILL.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. WILLS (§ 133*)—PROBATE—SUFFICIENCY OF EVIDENCE—EXECUTION OF HOLOGRAPHIC WILL.

   A will written by testator at his club on a sheet of its letter paper, dated and signed by him, and shown to attesting witnesses as his will, was executed as required by law.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 342–344; Dec. Dig. § 133.*]

2. WILLS (§ 133*)—PROBATE—SUFFICIENCY OF EVIDENCE—ATTESTATION OF HOLOGRAPHIC WILL.

   In respect to holographic wills, the rule as to the method of publication is not so severe as where the will is drawn by a scrivener; and where testator wrote his own will, and at different times on the same day showed it to attesting witnesses, who separately signed in his presence, but not in presence of each other, there was a legal attestation.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 342–344; Dec. Dig. § 133.*]

3. WILLS (§ 55*)—MENTAL CAPACITY—SUFFICIENCY OF EVIDENCE.

   Evidence at the hearing upon the probate of a holographic will held to show that at the time the testator executed the will he was of sufficiently sane mind to make it.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WILLS (§ 166*)—FRAUD AND UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.
Evidence at a hearing upon the probate of a will written by the testator himself, and leaving his whole estate to a former mistress, *held* to show that its execution was not obtained by fraud and undue influence.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

Appeal from Surrogates' Court, Saratoga County.

In the matter of the probate of the last will and testament of Harry M. Levengston, Jr., Harry M. Levengston, Sr., contestant. From a decree of the Surrogate's Court admitting to probate the alleged last will and testament of Harry M. Levengston, Jr., deceased, the contestant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Rockwood & McKelvey, of Saratoga Springs, for appellant. Leary & Fullerton, of Saratoga Springs, for respondent.

LYON, J. The instrument offered for probate was as follows:

"The Saratoga Club.   Saratoga Springs, N. Y.
"October 5th, 1911.   Last Will and Testament of H. M. Levengston, Jr. It is my desire that all property, whether real or personal, belonging to me, shall go to Miss Caroline M. Finlay at my death.      H. M. Levengston, Jr.
"Witnessed by:
      "David W. Mabee.
      "John A'Hearn."

Testator died unmarried in March, 1912, about five months after the execution of the will. A petition for the probate thereof was presented to the Surrogate's Court of Saratoga county the following June. Objections to the probate were filed by Harry M. Levengston, Sr., the father and sole heir at law and next of kin of decedent. The surrogate rendered his decision in November, 1912, admitting the will to probate. From the decree entered thereon the contestant took this appeal.

The grounds of objection to probate specified by contestant were, in effect, threefold: That the will was not executed and attested as prescribed by law; that testator was not at the time of making the will of sound mind and memory and capable of making a will; and that its execution was obtained by fraud and undue influence.

[1, 2] As to the first ground of objection, the instrument was written by the testator, a layman, in the rooms of the Saratoga Club, of which he was a member, upon a sheet of the letter paper of the club, about 2 o'clock in the afternoon of the day upon which it bears date. After writing the will and signing it the testator called witness Mabee, who was also a member of the club, over to the desk where he had written it, and showing him the instrument asked him to sign it, saying it was his last will and testament, that he had an income of $1,000 per year, and wanted Miss Finlay to have it, and asked witness Mabee not to say anything about it, as he did not want it known about town. Mabee saw the signature of the testator thereon, and in testa-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tor's presence signed his name as a witness thereto. About 6 o'clock that afternoon the witness A'Hearn, who was steward of the club, came on duty. About 7 o'clock testator handed him the instrument, telling him it was his will, and requested him to sign it as a witness, which he did in testator's presence, after reading it over. On the following day testator sent the will inclosed in an envelope with an affectionate letter to Caroline Finlay, the sole legatee therein named, in whose possession it seems to have thereafter remained until the time when it was offered for probate. The evidence above referred to is sufficient to establish the execution and attestation of the will as required by law. Matter of Akers, 74 App. Div. 461, 77 N. Y. Supp. 643, affirmed on opinion below, 173 N. Y. 620, 66 N. E. 1103; Matter of Phillips, 98 N. Y. 267; Matter of Marley, 140 App. Div. 823, 125 N. Y. Supp. 886; Matter of Burns, 88 App. Div. 611, 84 N. Y. Supp. 554. The rule in respect to holographic wills as to the manner and method of publication is not so close and severe as where the will is drawn and executed under the direction of an experienced scrivener. A substantial compliance with the statute is sufficient. Matter of Beckett, 103 N. Y. 167, 8 N. E. 506; Matter of Akers, supra. We have not overlooked Matter of Keeffe, 155 App. Div. 575, 141 N. Y. Supp. 5, affirmed without opinion 209 N. Y. ——, 102 N. E. ——, reversing the probate of a purported will which was not signed by the testator in the presence of either witness, and which was presented to one of the witnesses so folded that the signature of the testator to the instrument could not be seen. In this latter circumstance rests the vital distinction between the Keeffe Case and the case at bar, the court holding, as in the cases above cited, that where a will has not been signed by the testator in the presence of either witness, the testator must, with his signature to the will visible, acknowledge the same to each of the witnesses, and that an acknowledgment to only one of the witnesses is insufficient.

[3] As to the second ground of objection to the probate of the will, that testator was not at the time of making it of sound mind and memory and capable of making a will, it appears that testator was at that time about 25 years of age; that he had been to an extent mentally deficient from the time of his birth, had been allowed too much money, and had generally been unreasonably indulged from his earliest years; that as a boy he was backward in his studies, and not up to the usual mental standard of boys of his age; that before becoming of age he became addicted to the use of intoxicating liquors, which habit increased with his age until he very frequently drank to excess; that while, when sober, he seems to have been pleasant and companionable, when badly intoxicated he was profane, vulgar, ugly, and at times delirious. The evidence shows that when sober he was rational, knew what he wanted, and was set in his ways; that he was fond of hunting and of other sports, and could play a good game of cards. The evidence is that at the time of drawing the will and obtaining the signature of witness Mabee he was entirely sober, and the language of the will indicates that at the time it was drawn he was rational. Witness Riordan testifies that testator was perfectly

sober at 6 o'clock when the witness left the club. However, witness A'Hearn testifies that at the time he signed as a witness testator was under the influence of liquor, but the testator seems to have known what he wanted and to have been able to intelligently state to the witness that the paper was his will, and that he wanted him to sign as a witness. The letter written by him to the legatee the following day inclosing the will was wholly rational, and indicated that making the will was his intelligent and deliberate act. The letter was as follows:

"The Saratoga Club, Saratoga Springs, N. Y.

"My Own Darling:

"Am sending you a paper which is in every way absolutely legal, and want you to be very careful to put it where it won't get lost. I want to see you awfully, but I have made up my mind not to come to your house unless I can truthfully say that I have not had one single drink. I will be up between 6 and 7 tonight, under the conditions I have named.

"As ever,                                                        Harry.

"P. S.—Send me word by bearer how you are, and please be nice and don't say anything cross.                                        H."

The contestant called upon the issues as to the capability of the testator to make a will three witnesses, two experts and a layman, the testimony of the latter of whom was entitled to little weight. It would seem that had the testator when sober been of unsound mind and memory, and incapable of making a will, ample evidence of that fact might have been obtained from credible witnesses residing in Saratoga, where testator had lived his whole lifetime, as to irrational acts relating to ordinary affairs committed by him when sober. In his opinion the surrogate says:

"The will itself betrays no irrationality. It was written by deceased in his own hand and without assistance. It clearly expresses the wish in his mind at the time of its execution. * * * I am constrained to believe from all the circumstances of the case that the decedent had sufficient capacity and soundness of mind to make the will in question within the meaning of the statute."

Under all the evidence, it must be held that at the time the testator made the will he was of sufficiently sane mind to make it.

[4] As to the third ground of objection to the probate of the will, that its execution was obtained by fraud and undue influence, it appears that for about four years prior thereto the testator had practically maintained a house at Saratoga where he lived with the legatee, a dressmaker, who was unmarried, and about seven years his senior, as his mistress. The circumstances attending the inception of these illicit relations do not appear, but the learned surrogate says, "If it were his blame, the will would be entirely praiseworthy in its results." However that may be, her influence seems to have been to restrain him from drinking, and, aside from her relations with the testator, the evidence discloses nothing against her character. That the testator had deep affection for her appears throughout the evidence, and particularly in the eleven letters which he wrote her during her absence in Canada, commencing about six weeks prior to the making of the will. The testator's relations with his father, whose character and life the testator seems to have criticised, had been for

years very much strained; his father having practically excluded the testator from his home during the absence of testator's mother. His relations with his mother were apparently tender and affectionate, and upon her part overindulgent. There is no direct evidence establishing the exercise of fraud and undue influence upon the part of Miss Finlay in procuring the execution of the will, nor from which fraud and undue influence can properly be inferred. The evidence shows that the testator was set in his way and headstrong, and all the evidence bearing upon the subject indicates that the making of the will was the exercise of his free act, wholly untrammeled by fraud or undue influence. Not only that, but under all the circumstances disclosed by the evidence, making his will as he did was apparently the natural thing for him to do.

The decree of the surrogate admitting the will to probate was correct, and should be affirmed.