(Surrogate's Court, Westchester County, December, 1913.)

1. WILLS (§ 133*)—EXECUTION—PUBLICATION.
    Under Decedent Estate Law (Consol. Laws, c. 13) § 21, subds. 2 and 3, providing that subscription to wills shall be made by the testator in the presence of the attesting witnesses, or shall be acknowledged by him to have been so made, and that the testator at the time of making such subscription shall declare the instrument to be his last will and testament, a document written out by the testatrix and signed by her is sufficiently published as her will, where the nurse, when the witnesses were called in, stated that she wanted them to sign her will, and the testatrix answered "Yes;" for statutory requirements as to publication are not so strictly enforced where the will is holographic.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 342–344; Dec. Dig. § 133.*]

2. WILLS (§ 55*)—TESTAMENTARY CAPACITY.
    The mere fact that the testatrix had taken poison with suicidal intent will not establish her want of testamentary capacity, where her will was rational and was drawn by herself.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

In the matter of the proof of a document purporting to be the last will and testament of Anna Holmberg. Will probated.

Frank J. Lamb, of White Plains, for proponent.
John Ambrose Goodwin, of White Plains, for contestants.

SAWYER, S. On August 19, 1913, the testatrix, presumably with suicidal intent, took bichloride of mercury tablets. She was taken to White Plains Hospital, where six days later she made her last will and testament, which is now offered for probate. On the day of making her will she asked the nurse at the hospital to send for her mother and two witnesses, as she desired to make her will. This request was complied with by the nurse, and two subscribing witnesses came to the hospital about 10 o'clock at night. Shortly after their arrival at the hospital the subscribing witnesses were taken into the room where the testatrix was sitting up in bed. She had in her hand a paper which had been drawn and signed by her. The nurse handed the paper to the two witnesses and said, "This is Anna's will and she wants you to sign it," and the testatrix answered "Yes," according to the testimony of one subscribing witness, and nodded her head, indicating "Yes," according to the testimony of the other subscribing witness. The two witnesses then, in the presence of each other and in the presence of the testatrix, signed their names as witnesses to the will. The testatrix died on August 31, 1913, from the effects of bichloride of mercury poisoning.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Under the foregoing facts there are three questions to be considered: (1) Was there a sufficient publication of the will of the testatrix? (2) Was there a sufficient acknowledgment of the signature of the testatrix to each of the attesting witnesses? and (3) did the testatrix at the time of making the will have sufficient testamentary capacity?

[1] Section 21 of the Decedent Estate Law sets forth the manner in which a will must be executed. Subdivisions 2 and 3 are as follows:

"2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.

"3. The testator at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament."

I have carefully considered all of the testimony of the various witnesses, and am of the opinion that there has been a practical compliance with the statute in this case. The will was a holographic one, and was signed by the testatrix before the same was submitted to the subscribing witnesses for their signatures. Both of said subscribing witnesses testified that the nurse said in their presence to the testatrix at the time of execution of the will: "This is Anna's will [meaning the testatrix], and she wants you to sign it." One witness testified that the testatrix answered "Yes," and the other witness testified that the testatrix nodded her head, indicating "Yes." This is a sufficient declaration. Taylor v. Brodhead, 5 Redf. Sur. 624.

"Statutory requirements as to the publication are not so strictly enforced where the will is holographic." Matter of Marley, 140 App. Div. 823, 125 N. Y. Supp. 886.

Both of the subscribing witnesses to the will testified that the will was signed before it was handed to either of them for their subscription. Both the will and the signature of the testatrix were disclosed to the subscribing witnesses at the time they signed their names as witnesses thereto. After an examination of the various authorities I am convinced that the actual exhibition and disclosure by the testatrix to the witnesses of both will and signature, accompanied with a declaration of the testamentary character of the instrument, is a sufficient acknowledgment of the signature within the requirements of the statute. Baskin v. Baskin, 36 N. Y. 416; Matter of Phillips, 98 N. Y. 267; Matter of Mackay, 110 N. Y. 611, 18 N. E. 433, 1 L. R. A. 491, 6 Am. St. Rep. 409; Matter of Laudy, 148 N. Y. 403, 42 N. E. 1061; Matter of Turell, 47 App. Div. 560, 62 N. Y. Supp. 1053, affirmed 166 N. Y. 330, 59 N. E. 910.

[2] As to the question of testamentary capacity there can be no doubt, taking into consideration all the facts and circumstances, that the testatrix had sufficient mental power and sufficient active memory to make her last will and testament. The facts stated above show that she asked the nurse to procure witnesses, as she desired to make her last will and testatment. Under her directions the witnesses were obtained, and the will, after being drawn by the testatrix, was properly

executed. The nurse testified that in her opinion the testatrix was rational, and that she was capable of making known her wants and desires. This, together with the fact that she drew the will herself, and made her mother, she having no children, her sole beneficiary, convinces me beyond a doubt that the testatrix had sufficient mental capacity to dispose of her property by will.

In Delafield v. Parish, 25 N. Y. 9, 29, the court carefully reviews the authorities bearing upon this question, and asserts the rule, not since departed from, that:

"It is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should, or might have been, the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the cases, have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them. A testator who has sufficient mental power to do these things is, within the meaning and intent of the statute of wills, a person of sound mind and memory, and is competent to dispose of his estate by will."

In the case of McGown v. Underhill, 115 App. Div. 638, 101 N. Y. Supp. 313, the plaintiff came into court alleging the invalidity of the will, and the court, at page 640, of 115 App. Div., at page 314 of 101 N. Y. Supp., said:

"She is bound to show, on the question of the testator's testamentary capacity, that he was not able to comprehend the condition of his property, his relations to those having natural claims upon his bounty, and the scope and bearing of the provisions of his will. It is not enough to show that he might not have had this capacity, for the law, under the Code provision which gives the plaintiff her cause of action, presumes that he had the capacity, and she must show that he did not have the capacity."

The mere fact that she had taken bichloride of mercury poison with suicidal intent does not of itself warrant the deduction that her mind was unsound, or that she lacked testatmentary capacity at the time of making the will. Roche v. Nason, 185 N. Y. 128, 77 N. E. 1007.

Wills are not to be set aside except for the gravest reasons. A person has the right to dispose of his property in such a way and to such persons as he thinks best. It is only in a case where there is subtantial proof of mental incapacity, or of undue influence, that courts or juries may annul his testamentary act. Hagan v. Sone, 174 N. Y. 323, 66 N. E. 973.

Objections overruled, and will admitted to probate.

Findings and decree may be prepared and submitted on notice.

Probate decreed.