---

### In re BASSETT'S WILL.

#### (Surrogate's Court, Lewis County. March 26, 1914.)

1. WILLS (§ 302*)—PROBATE—SUFFICIENCY OF EVIDENCE.
   Evidence on the probate of a will *held* sufficient to show that testator told the witnesses that it was his will and asked them to sign as witnesses thereto, and that when the will was presented to them testator's subscription thereto was in plain sight.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 575, 581, 700–710; Dec. Dig. § 302.*]

2. WILLS (§ 303*)—PROBATE—SUFFICIENCY OF EVIDENCE.
   If the circumstances surrounding the execution of a paper show that it was executed as a will, it may be probated against the testimony of the subscribing witnesses, or on the testimony of one contrary to that of the other.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

3. WILLS (§ 119*)—EXECUTION—PUBLICATION AND ACKNOWLEDGMENT.
   Where a testator produces a paper personally drawn and subscribed by him with the subscription in plain sight, declares to the witnesses that it is his will, and asks them to sign as witnesses, there is a sufficient publication of the will and acknowledgment of his subscription.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 305–313; Dec. Dig. § 119.*]

4. COURTS (§ 87*)—PRECEDENTS—AFFIRMANCE WITHOUT OPINION.
   An affirmance of a judgment by the Court of Appeals without an opinion is not necessarily an approval of the opinion of the court below, but only of the point decided.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 306–310; Dec. Dig. § 87.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceeding to prove the will of James F. Bassett, deceased. Will admitted to probate.

Edward J. Boshart, of Lowville, for proponent.
Frank Bowman, of Lowville, for contestant.

CARTER, S. The paper propounded for probate as the last will and testament of James F. Bassett, deceased, is written and subscribed by testator in his own handwriting on an ordinary blank form of will, and has a full attestation clause subscribed by two witnesses, viz., A. H. Linstruth and Jay E. Reed.

The only question to be determined is whether said paper was executed according to law.

[1] It appears from the testimony of the witness Reed: That he and the witness Linstruth went to the house where the testator resided, and, the two witnesses and testator being together alone in the same room in said house, that testator laid the will on a secretary or desk in such manner that the whole of the last page of the will, including the clause appointing an executor, date of will, signature of testator, and the attestation clause were all exposed to view, and testator then said:

"I made out a will thirteen or fourteen years ago in favor of my wife, but she has gone and I had to make out a new one and I want you two to sign as witnesses."

That said testator then pointed out to him (Reed) where to sign, and he signed his name under the attestation clause of the will. That at the time he signed his name he saw the signature of the testator at the end of the will. That he had seen the testator's writing and knew his signature, and that the signature, "James F. Bassett," at the end of the will, was the signature of said testator. That the will was not picked up. That the witness Linstruth signed the attestation clause. That before Linstruth signed he hesitated and asked testator whether the witnesses weren't supposed to know what was on the other side before they signed, and testator told him no, and then Linstruth signed the attestation clause of the will.

The witness Linstruth testified (referring to the occasion when the will was executed): That he, Reed, and testator were together. That testator handed him (Linstruth) the will. That he read the words, "I hereby appoint W. S. Goutremout executor," and no more. That while he held the paper in his hand he said to testator, "Hadn't we ought to know what was on the other side of the paper?" Testator replied, "No, I have looked it up and you don't need to know." That he signed the attestation clause. That the testator did not tell him it was his will. That testator did not ask him to sign as a witness. That he could not remember that any one asked him to sign. That he did not see testator's name subscribed to the will and did not know whether it was there. That when he held the.instrument in his hand he understood it was a will. That the written part of the will is in the handwriting of testator, and the name, "James F. Bassett," at the end of the will, is the signature of the testator. That he never before wit-

nessed a will. That testator's wife died a short time before the execution of the will.

The words, "I hereby appoint W. S. Goutremout executor," which Linstruth says he read, are less than two inches above the signature, "James F. Bassett," at the end of the will, and said name is approximately three inches above where Linstruth signed his name to the attestation clause. There is no intimation by any one that the paper was folded at any time so as to prevent the witnesses seeing the whole of the last page of the will, and it could not have been so folded that Linstruth could read what he says he did, and signed where he signed, without being in a position to see testator's signature.

It would seem that the inquiry of Linstruth, "Hadn't we ought to know what is on the other side of the paper?" must have been made in response to some request of testator to sign the will. It is not likely that Linstruth made the above inquiry, hunted up the place to sign, and signed the will without any one telling him what the instrument was nor asking him to sign. The evidence of Linstruth is not reasonable nor probable; and I am satisfied that he has forgotten the transaction, that his statement does not correctly express what occurred at the time the will was executed, and that the signature of the testator was at that time subscribed to the will and could and must have been seen by the witnesses. It has been held if the witness could see then legally he did see. Matter of Carll, 38 Misc. Rep. 471, 474, 77 N. Y. Supp. 1036; and see Matter of Laudy, 161 N. Y. 429, 433, 55 N. E. 914, and Matter of Stockwell, 17 Misc. Rep. 108, 40 N. Y. Supp. 734.

After a careful consideration of all the evidence, I am convinced that the witness Reed gave a substantially correct statement of what occurred at the time the will was executed, and that the testator presented the will, which had been previously and personally drawn and subscribed by him to said two witnesses, with the subscription in plain sight of them, and in substance and effect told the witnesses that it was his will and asked them to sign as witnesses thereto, and that in obedience to this request they did sign the attestation clause to said will in his presence and in the presence of each other.

[2] If the circumstances surrounding the execution of a paper show that it was executed as a last will and testament, it may be admitted to probate against the testimony of all the subscribing witnesses, or on the testimony of one contrary to the testimony of the other. Matter of Cottrell, 95 N. Y. 329; Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422, 425, 426; Matter of Marley, 140 App. Div. 823, 125 N. Y. Supp. 886.

[3] Where a testator produces a paper personally drawn and subscribed by him, with the subscription in plain sight, and declares to the witnesses that it is his last will and testament and asks them to sign as witnesses, he does all that is required, and it is a sufficient publication of the will and acknowledgment of his subscription. Baskin v. Baskin, 36 N. Y. 416; Matter of Laudy, 161 N. Y. 429, 55 N. E. 914; Matter of Marley, 140 App. Div. 823, 826, 125 N. Y. Supp. 886; Matter of Akers, 74 App. Div. 461, 464, 77 N. Y. Supp. 643, affirmed on opinion below in 173 N. Y. 620, 66 N. E. 1103.

In Matter of Akers, supra, the court said:

"In the present case we have the fact that the subscription was actually made by the testator; that one of the witnesses saw and knew it; that the testator declared it to be his will; that he requested the witnesses to witness it as such. This * * * constituted a substantial compliance with the statute as to subscription, acknowledgment, and publication."

In Matter of Marley, supra, the evidence of one of the witnesses was rejected as untruthful.

"The other witness (Buchman) and the deceased had long been intimate friends. Some time before the attempted execution of the paper by the deceased, Buchman had made his will and had asked the deceased to subscribe it as a witness, which he did, and the occurrence was clearly remembered by both. After the deceased (Marley) had prepared and signed the paper in question, he presented it to Buchman and said: 'I would like you to sign this paper. This is the same kind of a paper that you asked me to sign for you.' The witness (Buchman) testified that he understood the deceased to ask him to sign his last will and testament as a subscribing witness, and that he did sign the paper directly under the attestation clause in testator's presence, and saw and recognized the testator's signature, with which he was perfectly familiar, at the time of so doing."

The court said:

"We are of the opinion that what took place was a sufficient publication, acknowledgment of signature, and request to sign as a witness to meet the requirements of the statute," and the will was admitted to probate.

In Matter of Levengston, 158 App. Div. 69, 142 N. Y. Supp. 829, the will was written by the testator, a layman, upon a sheet of letter paper. After writing the will and signing it, the testator called witness Maybee over to the desk where he had written it, and, showing him the instrument, asked him to sign it, saying it was his last will and testament. Maybee saw the signature of the testator thereon, and in testator's presence signed his name as a witness thereto. The same day testator requested the witness A'Hearn to sign the will as a witness, which he did in the testator's presence, after reading it over. Held, that the evidence above referred to was sufficient to establish the execution and the attestation of the will as required by law.

In Matter of Nussbaum, 144 N. Y. Supp. 443, the court said:

"Where a will is not signed by testator before an attesting witness, but it is produced by testator with testator's signature visible thereon, and testator then acknowledges to the witness that the instrument is testator's will, a distinct acknowledgment of the testator's signature is necessarily involved in the testator's acknowledgment of the will and the request to witness same."

And to the same effect, Matter of Holmberg, 83 Misc. Rep. 245, 145 N. Y. Supp. 846.

[4] Mitchell v. Mitchell, 16 Hun, 97, affirmed without opinion in 77 N. Y. 596, and Matter of Keeffe, 155 App. Div. 575, 141 N. Y. Supp. 5, affirmed without opinion in 209 N. Y. 535, 102 N. E. 1104, relied upon by contestant, are not in point for the reason that in each of said cases when the testator presented the will to one of the witnesses it was so folded that the signature of the testator to the instrument could not be seen. True, the court in the Mitchell Case said:

"He (testator) never acknowledged or stated to either of them (witnesses) that the subscription which appears at the end of the paper was made by him. He did, it is true, declare that the whole instrument was his will. But that is not enough."

This was not necessary to the determination of the case, and, while this decision was affirmed in the Court of Appeals, it was without opinion. An affirmance without opinion does not necessarily mean approval of the opinion by the court below, but makes the Court of Appeals responsible only for the point decided (which in that case was that the will should not be admitted to probate). Rogers v. Decker, 131 N. Y. 490, 30 N. E. 571.

But if said Mitchell v. Mitchell be considered as holding that where a testator presents an instrument, previously written and subscribed by him, to the witnesses, with his subscription in plain sight, and declares the instrument to be his will, is not a sufficient acknowledgment of the subscription, then it (Mitchell v. Mitchell) is in direct conflict with Baskin v. Baskin, Matter of Laudy, Matter of Akers, Matter of Marley, Matter of Levengston, Matter of Nussbaum, and Matter of Holmberg, all of which are cited above.

I am satisfied that the will was executed as required by law, and a decree may be entered admitting same to probate.