■ In the Matter of the Estate of NATHAN AGAR, Deceased. EMILY R. CRAIG, Appellant; ROBERT A. AGAR et al., Respondents. — Decree, Surrogate's Court, New York County (Lambert, S.), dated and entered March 27, 1981, admitting to probate a purported will of Nathan Agar, deceased, unanimously reversed, on the law, with costs to all parties filing briefs payable out of the estate, probate denied and the petition to probate said document dismissed. Nathan Agar, a certified public accountant, died on June 24, 1978 at approximately 89 years of age. His wife had predeceased him. He resided at 240 Central Park South and maintained offices at 51 Chambers Street, Manhattan. Just prior to Agar's death, he suffered a stroke and was hospitalized at Roosevelt Hospital, Manhattan, where he remained in a coma. At this time his daughter Ruth came to New York from college to be with her father, and stayed at his apartment. On top of the dining room table in the apartment she found the purported will in issue. It then consisted of two separate sheets of paper not fastened together in any manner. Sometime later they were stapled together and placed in a blue back. The record is barren of information as to how this came about. The first sheet bears the date November 13, 1974. Both sheets bear the signature of Agar. The instrument is holographic. It contains no attestation clause. Beneath Agar's signature, on the second page, there are the signatures and addresses of two persons who allegedly witnessed Agar's signature, to wit, Wilfred Soltan and Fay Mintz. Both were employed at various times in Agar's office. It is undisputed that (1) the handwriting of the instrument is that of Agar; (2) the signature "Nathan Agar", appearing on each of the pages, is that of the decedent; and (3) the signatures of Soltan and Mintz, as attesting witnesses, are genuine. The weight of the evidence compels the conclusion that the document should not have been admitted to probate as Agar's will, as it was not shown to have been executed with the requisite formality. (1) There is no proof that the instrument signed by Agar and witnessed by Soltan and Mintz consisted only of the two numbered pages that were not integrated when found. Neither witness knew how many pages the document which they witnessed contained. (2) It is undisputed that Agar did not sign the instrument in the presence of each of the attesting witnesses. There is no proof that he acknowledged to each of them that his signature appeared upon it, necessary where the witnesses have not witnessed the testator's execution of the Will. At his deposition, Soltan testified: "Well, it happened the same way both times. He would come into my room and say, 'Bill, I have a will here. I want you to witness it.' He would fold the paper up so that I wouldn't see anything. Q. All you saw was the space for your signature; is that correct? A. Yes. All I would see is a blank space. I don't even know if my name was typed in." On the trial, Soltan testified that the decedent came into Soltan's office with a folded piece of paper and said, "Bill, I would like you to witness my signature. This is my will." Soltan testified that after he signed, Agar went directly across the office to Mrs. Mintz and said: "Fay, Bill signed my will. I'd like you to witness my signature on my will." Mintz testified that she only witnessed one will for Agar, and that she does not remember when that was. She testified: "He asked me to sign. First he asked Mr. Soltan to sign and then he asked me. We were in the office together. * * * He said, 'Please sign my will.' * * * That was it. He simply asked me to sign his will. I didn't even read it. * * * He put it down and I put my signature on it. That was all there was to it. I didn't even look at it." From the foregoing it is plain that

Mintz did not testify that Agar ever acknowledged his signature to her when she was signing as witness or at any other time. There is no testimony she ever saw his signature. The learned Surrogate, expressing some doubt as to Soltan's credibility, nonetheless found that decedent's signature was duly acknowledged to both witnesses. We disagree. Although it may be that an acknowledgement of decedent's signature to Soltan can be spelled out from his testimony, the record is plain there was no acknowledgement to Mintz. Since it is undisputed that Agar did not sign his will in the presence of these witnesses, it could only be valid if he acknowledged it to each under EPTL 3-2.1 (subd [a], par [2]). Even if there was an acknowledgement to Soltan, there was none to Mintz. On this basis alone the instrument was not entitled to probate (*Matter of Keeffe,* 155 App Div 575, affd 209 NY 535). There is also lack of proof that Soltan and Mintz attested the will as witnesses within "one thirty day period" as required by EPTL 3-2.1 (subd [a], par [4]). The statutory presumption of compliance with this requirement, relied upon by the Surrogate, is clearly insufficient in the face of the evidence. The record is clear that on December 5, 1974, the date on which Soltan says he signed the will, Mintz was not working so that she could not have been in Agar's office where she and Soltan worked. She drew full unemployment insurance "from the week ending * * * July 21, 1974 through January 12, 1975". Mintz testified that when she signed the will it was a regular working day. Soltan testified that he may have witnessed a second will of Agar in 1976 or 1977. However, Mintz testified she only witnessed one will. She was unable to remember the date. There has been a failure to prove the instrument offered for probate was the instrument attested to and that such attestation occurred "within one thirty day period". The proponent has failed to meet the requirements of EPTL 3-2.1 (subd [a]). It has not been shown that the instrument was acknowledged to one of the witnesses. It does not appear who stapled the two sheets together and when. Thus, there is a failure of proof that this was the instrument attested to by the two witnesses. The purported will fails to meet the requirements of the statute designed to prevent fraud (*Matter of Allen,* 282 NY 492, 496, 497). Probate should have been denied. Concur — Murphy, P. J., Kupferman, Sandler, Fein and Asch, JJ.