## In re HURLBUT'S WILL.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. WILLS—PRESUMPTION OF FRAUD AND UNDUE INFLUENCE.
    Confidential relations between a testator and a son whom he favored in his will raise no presumption of fraud or undue influence; but are at most only circumstances to be considered with other facts to determine undue influence.

2. SAME—BURDEN OF PROOF.
    Testator, over 80 years old, willed the bulk of his estate to his two sons in equal shares for life. On the death of the elder, with whom the testator held confidential relations, the income of his share was to go to his wife or children until the younger son died, and, if the younger son died first, his share was to go to his brother; the younger son having been divorced, and being without children. When both sons were dead, the property was to go to the testator's surviving grandchildren, among whom was the only child of a deceased daughter, but she was married, and apparently provided for. Testator had contributed to the support of all his children, but had assisted his elder son much more than the others. The latter attended to the details of the testator's business, and several codicils to the will indicated a growing dependence and confidence in him. *Held* insufficient to cast on the favored son the burden of proving that he had not abused his confidential relations, and had not exercised undue influence over the testator.

Appeal from surrogate's court, New York county.

Application for probate of the will of Henry A. Hurlbut, deceased. From a decree admitting the will to probate (57 N. Y. Supp. 648), contestants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Albert Stickney, for appellants.
John E. Parsons, for respondent.

INGRAHAM, J. In determining this appeal we have had in mind the responsibility imposed upon us that, where an appeal is taken upon the facts, the appellate court has the same power to decide the questions of fact which the surrogate had (Code Civ. Proc. § 2586), and we have considered the testimony taken before the surrogate, and based our determination upon it. The sole objection to the will relied on by the contestants in the court below and upon this appeal is that the will was procured by undue influence; and the contestants ask that we apply the principle that, where an instrument is obtained in favor of one holding a confidential relation to the person who has executed it, there is a presumption of fraud or undue influence, and that the burden is cast upon the person occupying that position of repelling that presumption. Without such a presumption, we think the case is entirely devoid of proof to justify a finding that any one influenced the testator in the execution of the will, and such was the opinion of the surrogate upon determining the question when it was before him. We are not concerned with the extent of the presumption which exists in relation to voluntary grants in favor of or gifts to persons occupying relations of trust and confidence towards the grantor or donor. There is a well-defined distinction be-

tween instruments of the character mentioned and testamentary dispositions of property, which is well recognized and constantly applied in proceedings to determine the validity of instruments testamentary in their character; and this distinction arises from the very nature of a testamentary disposition. The natural objects of a testator's bounty are those who have been the closest and nearest to him during his life, and from whom he has received the most attention and affection. To presume that testamentary dispositions in favor of a husband or wife or child upon whom the testator has been the most dependent during his life, and who has administered to him in his personal and business relations most assiduously, are fraudulent, would be for the law to presume what is exactly contrary to the universal experience of mankind, and place a premium upon neglect and disobedience as against affection and devotion. It is rather considered evidence of fraud or incompetency when a testator overlooks those occupying such close relations, and makes a testamentary disposition of his property in favor of others who have not the same claims upon him. As was said by Judge Andrews in Re Smith's Will, 95 N. Y. 522:

"Undue influence, which is a species of fraud, when relied upon to annul a transaction inter partes, or a testamentary disposition, must be proved, and cannot be presumed. But the relation in which the parties to a transaction stand to each other is often a material circumstance, and may of itself in some cases be sufficient to raise a presumption of its existence. * * * The rule to which we have adverted seems, however, to be confined to cases of contracts or gifts inter vivos, and does not apply in all its strictness at least to gifts by will. It has been held that the fact that the beneficiary was the guardian, attorney, or trustee of the decedent does not alone create a presumption against a testamentary gift, or that it was procured by undue influence."

And in Post v. Mason, 91 N. Y. 548, the court adopted what was said in Barry v. Butlin, 1 Curt. Ecc. 637, that:

"All that can be truly said is that, if a person, whether an attorney or not, prepares a will with a legacy to himself, it is at most a suspicious circumstance of more or less weight, according to the facts of each particular case; in some of no weight at all, * * * varying according to circumstances,—for instance, the quantum of the legacy, the proportion it bears to the property disposed of, and numerous other contingencies."

The relation which existed, therefore, between the testator and his eldest son raises no presumption of fraud or undue influence, and is at most a circumstance to be considered with the other facts in determining whether the charge that this will offered for probate was obtained by undue influence was proved.

There is also a question raised as to the burden of proof. It is undoubtedly the rule that the burden of proof is upon the proponent, when he offers a will for probate, to prove that the will was duly executed, and the requirements of the statute complied with. When, however, fraud or undue influence is alleged, it must be proved by competent legal evidence. But where a decedent in the possession of his usual faculties, with sound and disposing mind, duly executes a will with the formalities prescribed by the statute, it cannot be rejected upon the ground of undue influence unless upon proof of facts that would justify an affirmative finding that such a fraud was practiced; and while, undoubtedly, the relations that existed between the

parties and the opportunity for fraud would be a material fact in determining the question, such relations or opportunity alone can never take the place of proof that such fraud actually existed. It is a question of fact upon all the evidence whether fraud or undue influence was proved, and, in the absence of such proof, it is the duty of the court to admit the will to probate. These principles are elementary, and further citation of authorities is unnecessary. Turning to the facts proved in this case, it appears that the will was executed on the 20th of September, 1894. The testator was a man 86 years of age, in good health, and in full possession of his faculties. He had led an active business life, and had retained the control and management of a large estate acquired by his own industry and ability. He was a director or officer of several large and important financial institutions, attending regularly to the business of those institutions, making investments both for them and for himself with judgment and sagacity, and exercising great influence among his acquaintances and those in control of the institutions with which he was connected. He maintained his own household, having with him his son Henry, who is one of the contestants, managing it with intelligence and care down to the minutest details. He lived about three years after making the will, and down to his death retained his position in these institutions without indication of mental decay, attending the meetings of the boards of which he was a member; and even on the morning of his death, which occurred on November 11, 1897, he attended a meeting of the directors of an important bank, of which he was one, and took part in the management of its affairs. In 1892 a will was prepared by an attorney with whom he had been acquainted for many years, who had acted as his professional adviser, and who was employed without the suggestion of any one, and without the knowledge, so far as appears, of the proponent, or any of the testator's children. To this attorney he submitted a will, which had been prepared for him years before by a prominent member of the profession, discussed the provisions of this will intelligently, and directed the same general disposition of his property to be contained in the new will, making minor changes. At this time the testator's family consisted of two sons,—one of whom was married, and had several children, and the other had been divorced from his wife, and was without children,—and a granddaughter, a child of a deceased daughter, who was married, and apparently in comfortable circumstances. Subsequently the testator executed several wills containing the same general disposition of his property, until he finally executed the will in controversy on September 20, 1894. This will, after giving certain specific bequests of very moderate amounts in comparison with the amount of the testator's estate, gave the residue of his estate to his executors, in trust to receive the income thereof during the lifetime of his two sons, and to apply the net amount of such income to them during their lives in equal shares. In the event of his son William, who had children, dying first, then during the life of his surviving son one half of the income was to be paid to the use of his son Henry, the survivor, and the other half of such income to the wife of his son William, if living, and, if not, then to the use of William's children during the continuance of the trust; but, should Henry die first,

then the whole income was to be applied to the use of William during his life; and upon the decease of the survivor of his two sons the trust was to cease, and all of the property held in trust was to be divided in equal shares among his surviving grandchildren and the widow of his son William. The provisions of this will certainly do not appear so grossly unfair or unjust as to justify any presumption against it. The evidence is that both of the sons were dependent upon their father for support. The granddaughter, the child of his deceased daughter, was married, and apparently provided for; and, in the event of her surviving her two uncles, she was to share with the testator's other grandchildren in the distribution of his estate. It is difficult to conceive of a will being executed under conditions which would to a greater extent preclude a conclusion of undue influence than those under consideration. The testator selects his own attorney, a gentleman of character and ability, and directs the preparation of a will, which had been determined upon for years, without, so far as appears, the knowledge of any of his children, or those who were to benefit by the testamentary disposition to be made. Thus, the beneficiaries were not the active agents in procuring the execution by one in extremis of an instrument disturbing dispositions previously settled, and which resulted in disinheriting those who were the natural objects of the testator's bounty, as in Tyler v. Gardiner, 35 N. Y. 594. The beneficiaries were not present when the will was executed, had no knowledge in fact that a will had been prepared, or was about to be executed, and had made no suggestion as to what disposition should be made of the testator's property; and there is no proof of any fact that would show that the proponent, or any one else, had imposed his will upon the testator, or had even suggested to him the propriety of making any disposition of his property. The only fact from which an inference of fraud could be drawn is the relation of the proponent to the testator, and that, as we have seen, is not of itself sufficient to cause any presumption of undue influence. But what was that relation? The proponent was the testator's eldest son. The testator had contributed a considerable sum of money to enable this son to go into business. He had contributed capital to various firms, of which the proponent had been a member, both in giving the proponent money to supply his capital and becoming special partner in firms of which the proponent was a member. It would appear that the proponent had been unsuccessful in business, and that a considerable amount, if not the whole sum, contributed by the testator, had been lost, and that the testator had paid considerable sums to discharge this son's debts and for his support. The amount thus contributed is disputed by the parties, but it does not appear to be material. During the latter years of the testator's life, and after the proponent's failure in business, the son had assisted in attending to the details of the testator's business, and the testator had given him an allowance with which he supported his family. It also appeared that the testator had supported his other son, Henry, and had also contributed to the support of his daughter during her life, she and her husband and child having made their home with the testator. Thus it would seem that the testator had contributed to the support of all his children, and it would appear

that the losses in business of his eldest son, and the amount that the testator had paid for him, largely exceeded the money he had expended on his other children. What the testator desired to do by his will was to provide a secure fund for the support of his two sons during their lives, and upon their death to divide his property equally between his surviving grandchildren. After the execution of this will, several codicils were executed, which indicate a growing dependence and confidence in his eldest son; but, outside of this relation which existed between his son and himself, there is absolutely nothing to show that these codicils were executed at the suggestion of the proponent, or of any one else; but, on the contrary, they appear to have expressed the testator's free will and judgment. The conditions under which they were executed, as testified to by the attorney who drew them, and who was a witness to their execution, seem to exclude any conclusion that they did not represent the testator's deliberately formed intention, expressed without influence of any kind. It is unnecessary for us to consider in detail this testimony. It is sufficient to say that after a careful consideration we agree with the surrogate that the facts proved fall far short of justifying a presumption of undue influence, or of even exciting a suspicion.

We think, therefore, that the decree below was right, and it is affirmed, with costs. All concur.