■ MILDRED POLULIAH, Appellant, v FIDELITY HIGH INCOME FUND et al., Respondents and Interpleading Plaintiffs-Respondents. ELLEN P. HALPERN, as Executrix of STANLEY G. HALPERN, Deceased, Interpleaded Defendant-Respondent. — Order of the Supreme Court, Bronx County (Mercorella, J.), entered June 8, 1983, which, *inter alia,* denied plaintiff's motion for summary judgment on the first and second causes of action in her complaint and denied that branch of plaintiff's motion seeking dismissal of the counterclaims asserted by

the interpleaded defendant Ellen P. Halpern, as executrix of the estate of Stanley G. Halpern, is reversed, to the extent appealed from, on the law, the motion for summary judgment granted, that portion of the order directing an oral examination of plaintiff by the interpleaded defendant denied as academic, and the motion for dismissal of the counterclaims asserted by the interpleaded defendant against the plaintiff also granted, without costs. ¶ Stanley G. Halpern (the decedent) had been living with plaintiff since June of 1979, returning to the marital residence sporadically. The decedent and his wife, the interpleaded defendant Ellen P. Halpern, executed a separation agreement on January 30, 1980, at which time the decedent permanently left the marital residence. ¶ On September 17, 1980, the decedent signed an adoption agreement for the Fidelity Group Individual Account Plan, thereby becoming a participant in the Fidelity Plan. On the same date, the decedent also executed a beneficiary designation form naming plaintiff as his primary beneficiary and his two sons as his secondary beneficiaries. Both the adoption agreement and the beneficiary designation forms were executed in the presence of Maurice H. Kaufmann, the decedent's financial advisor. On that date, September 17, 1980, the decedent delivered to defendants Fidelity High Income Fund, Fidelity Service Company, FMR Corporation and FMR Service Company (Fidelity defendants) the designation of beneficiary form designating the plaintiff as primary beneficiary of the plan. ¶ On May 29, 1981, the decedent died while jogging. On November 2, 1982, the Fidelity defendants issued payment by check of $52,971.38 to plaintiff, as beneficiary of the decedent. In a letter dated October 25, 1982, the estate of Stanley G. Halpern advised the Fidelity defendants that the estate was of the belief that the decedent "was neither competent nor capable of exercising the requisite donative intent at the date of the purported designation of Mildred Poluliah as beneficiary in that such designation was the product of undue influence and/or duress." Therefore, plaintiff and the estate each claimed the $52,971.38, the proceeds of the plan. On November 9, 1982, the Fidelity defendants, in response to the October 25, 1982 letter from the estate, placed a "stop payment" against the check previously issued to plaintiff Poluliah. ¶ Plaintiff then commenced this action against the Fidelity defendants, the holder of the account, without naming the estate as a party. The substance of the plaintiff's claim is that she is the designated beneficiary of the investment account maintained by the late Stanley Halpern with the defendants, and that the decedent left a balance in that account of $52,971.38. Plaintiff's first cause of action demanded that defendants make distribution to her of the balance of the account in the sum of $52,971.38 and her second cause of action alleged that she had been damaged in the sum of $52,971.38 as a result of defendants having placed a "stop payment" on the check. The third cause of action asserted a claim against the defendants for damages allegedly arising as a result of the wrongful stop payment order. ¶ The Fidelity defendants, in their answer, admitted all the foregoing allegations and alleged as an "Interpleader Defense" that Mrs. Halpern, as executrix of the estate of Stanley G. Halpern, had made claim to the same funds. At the same time, defendants Fidelity properly served an interpleading summons and complaint upon the interpleaded defendant Mrs. Halpern, as executrix of the estate of Stanley G. Halpern. ¶ The interpleaded defendant Mrs. Halpern, in her answer, asserted two counterclaims against plaintiff Poluliah. The first counterclaim asserted that the proceeds of the account were properly payable to Mrs. Halpern because the designation of plaintiff as the primary beneficiary was procured "by means of fraud, duress and/or undue influence and coercion practiced by plaintiff upon the decedent who, upon information and belief lacked the capacity to make a gift at or about the time when it is claimed that such

designation was made." The second counterclaim sought to withhold from the proceeds of the account a sum sufficient to cover plaintiff's alleged apportionable share of State and Federal estate taxes. Interpleaded defendant Mrs. Halpern also served a notice to take deposition upon oral examination of plaintiff Poluliah. ¶ Thereafter, plaintiff Poluliah moved, *inter alia,* for (1) summary judgment in her favor on the first and second causes of action in the complaint; (2) dismissal of the counterclaims asserted by the interpleaded defendant or, in the alternative, severance of the counterclaims and a separate trial thereof; and (3) a protective order pursuant to CPLR 3103 vacating the interpleaded defendant's notice to take a deposition. ¶ Special Term, *inter alia,* denied plaintiff's motion seeking summary judgment and dismissal of the interpleaded defendant's counterclaims. This was error. ¶ In support of her motion, plaintiff submitted an affirmation from counsel, her own affidavit and an affidavit of Mr. Kaufmann, decedent's financial advisor. Mr. Kaufmann asserted in part: "At the time of their execution (as well as at all other times), Mr. Halpern was completely competent. His decision to name Ms. Poluliah as his primary beneficiary was the result of much consideration and was completely rational. He showed no signs of agitation, undue influence or duress. I believe my training as a guidance counselor as well as my close association with him would have enabled me to detect any signs of incompetence, irrationality or duress." ¶ The interpleaded defendant submitted an attorney's affirmation and her own affidavit in opposition to the motion. In her affidavit, Mrs. Halpern alleged that decedent "became extremely moody, critical, unhappy and abusive" toward her; that in 1978 "[h]is hostility eventuated in physical assault" upon her; that in 1978 decedent announced that he "'wanted a new life'"; that in 1978 "from a caring husband and family man decedent suddenly turned into a 'swinger'"; that in 1978 decedent "began experimenting with illegal drugs"; that in 1978 decedent "began an extended and extensive course of psychiatric treatment." With respect to the alleged undue influence exercised by plaintiff on decedent, Mrs. Halpern alleged that decedent "began living with plaintiff in an illicit relationship" some time after June, 1979; that decedent "permanently left the marital residence in January, 1980, after he and [she] had entered into a formal separation agreement"; that plaintiff also asserts that decedent made a gift to her during his lifetime of $11,500 in postdated checks which, according to Mrs. Halpern, contain forged indorsements; that plaintiff also asserts that she is entitled to receive the proceeds of a $20,000 Treasury bill, which, also according to Mrs. Halpern, was in the names of plaintiff and decedent as tenants in common; that after decedent's death, it took four months for plaintiff to deliver decedent's will. ¶ It is axiomatic that when, upon a motion for summary judgment, the movant's papers make out a prima facie basis for the grant of such motion, the opposing party must come forward and lay bare his proofs of evidentiary facts showing that there is a bona fide issue requiring trial. The opponent cannot defeat the motion by general conclusory allegations which contain no specific factual references (*Hanson v Ontario Milk Producers Coop.,* 58 Misc 2d 138). ¶ The court must deem as true all the factual allegations made by Mrs. Halpern, set forth above at length (*Weiss v Garfield,* 21 AD2d 156). Thus, the fact that decedent's attitude toward his wife "completely changed", that he became "moody, critical, unhappy and abusive" toward her, that he turned into a "swinger" and experimented with illegal drugs, began living with plaintiff, left the marital residence, that decedent made other gifts to plaintiff and that plaintiff was reluctant to deliver decedent's will to Mrs. Halpern and that decedent died while jogging, are deemed true for the purposes of this motion. The allegation that decedent underwent psychiatric treatment lacks details as to dates of such treatment, its nature and the source of this information. A motion for sum-

mary judgment may not be defeated by such hearsay evidence (see *Zuckerman v City of New York,* 49 NY2d 557). ¶ The allegations by Mrs. Halpern of acts allegedly committed by plaintiff after the death of the decedent, i.e., refusal to deliver the will, making claim to other funds belonging to decedent, are irrelevant to the issue of "undue influence." ¶ The facts and personal observations set forth in the Kaufmann affidavit were therefore not refuted by the interpleaded defendant in her opposition to the motion. Thus, Special Term should have deemed as true that decedent executed the beneficiary designation form in Mr. Kaufmann's presence, that no persons were present other than decedent and Mr. Kaufmann, that Mr. Kaufmann had known decedent from September, 1979 to May, 1981; that decedent showed no signs of agitation or irrationality, and finally, that decedent's purpose in naming plaintiff as his beneficiary had a loving and rational basis. ¶ Although Mrs. Halpern did not assert that decedent was addicted to drugs, even addiction does not cause a person to be deemed incompetent (*Matter of Robinson,* 87 Misc 164). A fortiori, the claim that decedent "experimented" with "illegal" drugs does not raise the issue of competency. Even if this court were to categorize decedent's relationship with plaintiff as "immoral", moral depravity does not amount to testamentary incapacity (*Matter of Anna,* 248 NY 421, 426). On the contrary, the courts recognize that such a relationship may result from affection and therefore explains the gift (*Matter of Levengston,* 158 App Div 69). ¶ As noted, the allegation that decedent was under psychiatric care was hearsay and undocumented. In any event, even if considered true for the purpose of this motion, the bald assertion of psychiatric or psychological counseling, standing alone, does not raise an issue of incapacity. People are encouraged today to receive such counseling for a myriad of problems, and no negative inferences can be drawn from the mere fact that one is receiving psychiatric treatment. ¶ The opposing papers also fail to raise a bona fide issue as to whether plaintiff utilized "undue influence" in causing the decedent to execute the beneficiary designation form. The fact that the beneficiary was not present at the execution of the document is evidence of the absence of undue influence (*Matter of Powers,* 176 App Div 455, 459). The evidence is even stronger where decedent selects his own counselor and directs the preparation of the document without the knowledge of the beneficiary (*Matter of Hurlbut,* 48 App Div 91, 96). The interpleaded defendant in opposition submitted solely the conclusory allegations that decedent was overly generous to plaintiff and that living with decedent gave plaintiff the opportunity to coerce him. ¶ In addition, Mrs. Halpern's opposing affidavits failed to show "that facts essential to justify opposition may exist but cannot then be stated" (CPLR 3212 subd [f]). The affidavits did not demonstrate that there were likely to be defenses and that these defenses depended upon knowledge in the exclusive possession of movant (see *Terranova v Emil,* 20 NY2d 493). ¶ Finally, Special Term should have dismissed the counterclaims in the interpleading answer. The first denominated counterclaim seeks to have the funds on deposit paid to the interpleaded defendant. The second counterclaim asks that with respect to the account in question herein and with respect to an unrelated fund, i.e., life insurance benefits received by plaintiff on the death of decedent, there be withheld an amount sufficient to cover plaintiff's apportionable share of New York State and United States estate taxes. However, it appears that the plaintiff would be directly liable for the amount of the State tax, if any (see Tax Law, § 249-g). It also appears from the record that no Federal estate tax was paid or is payable by the estate. In any event, we exercise our discretion to dismiss this counterclaim as inappropriate, without prejudice to a third-party action under the circumstances herein (see CPLR 3211, subd [a], par 6; 1010). Concur — Sullivan, J. P., Carro, Asch, Fein and Kassal, JJ.